**HANSON, Ex'x, v. ATCHISON, T. & S. F. RY. CO.**

No. 28575.   Jan. 31, 1939.

Rehearing Denied March 21, 1939.

Mark B. Ingle, for plaintiff in error.

Rainey, Flynn, Green & Anderson, for defendant in error.

GIBSON, J. This is an appeal from a judgment of the district court of Oklahoma county sustaining a demurrer to plaintiff's evidence, in an action by plaintiff in error against the defendant in error railway company to recover damages for the wrongful death of her husband, a railway engineer, caused by a collision between a freight engine and a passenger train. The action is governed by the Federal Employers' Liability Act (45 U. S. C. A. secs. 51-59).

On September 6, 1934, the deceased as engineer received a written train order directing engine 1814 as extra to act as "helper" or "pusher" to assist a freight train from Moline to Burden, Kan., a distance of approximately 28 miles. Engine 1814 was to be uncoupled at Burden and return as extra to Moline.

The single track extending west from Moline passed through the towns of Grenola, Grand Summit, Cambridge, then Burden, and thence on west. The track about three miles east of Cambridge extends in a long, level, sweeping curve east to northwest providing an unobstructed view of the track for 2,000 to 2,500 feet in either direction.

Early in the clear but dark morning of September 7th, the freight train having arrived at Burden, the helper engine was uncoupled, driven upon a sidetrack and the freight immediately proceeded on west. Engineer Hanson, the deceased, in compliance with his orders, proceeded east with engine 1814, running backwards, there being no facilities for turning the engine at Burden. The deceased and his fireman, Taylor, constituted the entire crew on this movement.

The three stations between Burden and Moline were "closed" stations, maintaining no operator. There was a siding at Cambridge and one at Grand Summit. Hanson in making his return trip was required to rely upon his watch, the train schedules, and the general operating rules of the railway company.

There was also operated on said single track a regularly scheduled west-bound passenger train. Hanson's train order indicated no place for meeting or passing the passenger train.

Fireman Taylor testified that just after starting east from Burden on the return trip, Hanson and he consulted Taylor's printed timecard, which showed that the passenger train was due out of Grand Summit at 4:05 a. m. That at the same time Hanson consulted his own watch and said that it was 3 o'clock and said they had one hour to get to Grand Summit, and the other five minutes to "clear." The distance from Burden to Cambridge was 5.3 miles; from Cambridge to Grand Summit 8.3 miles. That just as they reached the water crane east of Cambridge Hanson again consulted his watch and said it was 3:32. That they did not stop from time of leaving Burden to time of collision. That they maintained a speed of 18 to 20 miles for a distance of eight or nine miles east of Burden, or to a point about three miles east of Cambridge, where the track made the long sweeping curve, where the head-on collision occurred with the passenger train at, according to the passenger conductor, 4:15 a. m. The body of Hanson was found on the right of way about two miles west of the point of collision. Engine 1814, with portions of the tender, was found six or seven miles west of point of collision, steam exhausted and with reverse lever in forward position.

For reversal plaintiff executrix charges error of the trial court in sustaining the demurrer to her evidence, and in overruling her motion for a new trial.

Plaintiff states in her brief that the only question presented by this appeal is whether or not the evidence introduced by her was sufficient to make out a prima facie case.

The grounds of negligence relied upon by plaintiff are: That the passenger crew knew of the presence of the pusher engine; exceeded its time schedule; failed to give warning signals and reduce speed; failed to keep a proper lookout, and that the railway company failed to provide Hanson with a safe locomotive.

The defendant contends that the accident occurred by reason of the failure of Hanson to observe the rules of the defendant railway company, which required Hanson to keep his engine out of the way of the scheduled superior passenger train.

According to the railway company rules, Hanson's engine and tender constituted a train, and was inferior to regular passenger trains, and was required to "clear" the time of opposing regular trains not less than five minutes. Hanson was familiar with this rule.

The passenger crew was not aware of the presence of the pusher engine on the line

that night, and had they known of its presence they had the right to assume, under the standing rules of the railway company, that it would not be in the path of the passenger. The collision occurred almost instantly upon the discovery of the pusher engine by the passenger crew, and within four or five seconds after the application of the passenger's air brakes.

Plaintiff by a process of calculations arrives at the view that the passenger was ahead of its schedule, and thereon contends that the passenger had no right on that part of the track at the time occupied by the Hanson engine. There is no positive evidence that the passenger exceeded its time schedule. There is evidence that it proceeded on schedule.

Hanson had been in the employ of the railway for 30 years and had been over this particular part of the road many times. He was familiar with the type of engine he was operating. While it may have been more difficult to keep a lookout to the rear, the direction he was then traveling, it is not contended that such was impossible.

Hanson, operating the pusher engine, was charged with and had knowledge that the passenger was opposing him and had priority over his engine. The evidence discloses at the time Hanson noted his watch indicated 3:32 after traveling but 5.3 miles from Burden, where his watch read 3, some slight apprehension of their situation was manifested. Hanson may have misread his watch. However, we may assume that he believed he had a right to be on the track at that point at that time. But whether its close proximity was known to Hanson or not, the passenger had the superior right on the track at that point at that time in conformity with the railway rules and its time schedule.

The situation of peril was primarily created by Hanson's evidently inadvertent failure in his imperative duty to clear for the passenger. That duty attended the action of Hanson at all times. His failure in that duty was the sole proximate cause of the resulting collision.

"In respect to proximate cause, the United States Supreme Court, in Milwaukee, etc., Railway v. Kellogg, supra, page 475 of 94 U. S., said: 'The question always is: Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held, that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.'" Johnson et al. v. Kosmos Portland Cement Co., 64 Fed.2d 193, 195.

"In action to recover for injuries sustained by employee, where evidence disclosed that employee's negligence was sole proximate cause of injury, failure to direct verdict for employer held error, notwithstanding employer was also negligent, and employee could not reasonably have anticipated the precise manner in which injury would occur, since generally dangerous situation was foreseeable (Federal Employers' Liability Act, 45 U. S. C. A. secs. 51-59)." Louisville & N. R. Co. v. Davis, 75 Fed.2d 849.

Assuming that the failure of Hanson in his duty to clear for the passenger was inadvertent, he was not thereby relieved from that duty. As expressed in Great Northern Ry. Co. v. Hooker, 170 Fed. 154, quoting from Louisville & N. R. Co. v. Mothershed, 110 Ala. 143, 153, 20 So. 67, 69:

"The end and obvious tendency of its (the rule's) promulgation and enforcement was the all-important one of avoiding great peril of life and property. The highest considerations of duty to its employees, the general public, and itself impelled the defendant to its adoption. Being promulgated, and no unforeseen emergency arising which would render obedience to it in a given case impracticable or disastrous, all discretion as to the necessity of obedience was exhausted. The engineer having the means of observance, the rule was mandatory upon him. He had no right to inquire whether the surroundings seemed to render obedience necessary. It matters not, therefore, whether his disobedience was expressly willful, or inadvertent, or resulted from a reasonable belief, in his mind, that in the given instance obedience was unnecessary. He was equally culpable in either event."

That no recovery may be had in situations where the injured railway employee failed in the fulfillment of his duty with respect to railway rules for the operation of trains has been many times declared. St. Louis S. W. Ry. Co. v. Simpson, 286 U. S. 346, 52 S. Ct. 520, 76 L. Ed. 1152; Frese v. Chicago, B. & Q. R. R. Co., 263 U. S. 1, 44 S. Ct. 1, 68 L. Ed. 131; Davis v. Kennedy, Adm'x, 266 U. S. 147, 45 S. Ct. 33, 69 L. Ed. 212; Unadilla Valley Ry. Co. v. Caldine, 278 U.

S. 139, 49 S. Ct. 91, 73 L. Ed. 224; Unadilla Valley Ry. Co. v. Dibble, 31 Fed.2d 239 (cert. den. 280 U. S. 565); Southern Ry. Co. v. Youngblood, 286 U. S. 313, 52 S. Ct. 518, 76 L. Ed. 1124; Van Derveer v. Delaware, L. & W. R. Co., 84 Fed.2d 979, 981; Lancaster v. St. Louis & S. F. Ry. Co., 128 Okla. 176, 261 P. 960.

In International-Great Northern R. Co. v. Hawthorne (1938, Tex.) 116 S. W.2d 1056, in fireman's action for injuries resulting from head-on collision of locomotives due to conductor and engineer misreading timetable where evidence established fact that timetable was misread and that had it been read correctly, train would have gone into siding and avoided collision, it was held the conductor's negligence was the proximate cause of the injuries as matter of law.

In Chicago, M. & St. P. R. Co. v. Coogan, Adm'x, 271 U. S. 472, 46 S. Ct. 564, 70 L. Ed. 1041, that court said:

"By the Federal Employers' Liability Act, Congress took possession of the field of employers' liability to employees in interstate transportation by rail; and all state laws upon that subject were superseded. * * * The rights and obligations of the petitioner depend upon that act and applicable principles of common law as interpreted by the federal courts. The employer is liable for injury or death resulting in whole or in part from the negligence specified in the act; and proof of such negligence is essential to recovery. The kind or amount of evidence required to establish it is not subject to the control of the several states. This court will examine the record, and if it is found that, as a matter of law, the evidence is not sufficient to sustain a finding that the carrier's negligence was a cause of the death, judgment against the carrier will be reversed."

In Interstate Compress Co. v. Agnew, 276 Fed. 882, that court held:

"The rule in the federal courts is that in each case tried by a jury the question of law always arises at the close of the evidence whether or not there is such substantial evidence of the plaintiff's cause of action as will sustain a verdict in his favor and warrant the trial court in refusing in the exercise of its judicial discretion to set a verdict in his favor aside, if rendered, and any evidence, a scintilla of evidence, is not sufficient to warrant such a refusal, and the question of law arises on a request for a peremptory instruction made before the case goes to the jury."

Plaintiff executrix relies upon the case of Rocco v. Lehigh Valley R. R. Co., 288 U. S. 275, 53 S. Ct. 343, 77 L. Ed. 743. Rocco was killed in a head-on collision with an electric passenger train while he was riding a track inspector's bicycle at a blind curve where he could not see the approaching train nor the motorman see him. The deceased had failed to ask the position of the train that he was to meet, as required by a rule, though had he learned where it was, he might rightfully have gone on to meet it. The questions there presented were whether under the circumstances the respondent owed the decedent any duty to warn him of the approach of the train or to keep a lookout for him; and whether Rocco's disobedience of the rule was in such sense the primary cause of his death as to render immaterial any negligence on the part of the motorman. The court there declared that the risks assumed by Rocco did not include the failure on the part of the motorman to keep a lookout and give warning in a place where the view of one who might be expected to be on the track or approaching in the opposite direction was shut off.

That court further said that the rule relied upon by the respondent there, that Rocco should acquaint himself with the whereabouts of trains on the branch, and guide himself accordingly, did not forbid Rocco to start on his trip, and that if he had made the inquiry, whether he should await the arrival of the train or attempt to meet it at some point a short distance from the city was a matter for his decision, and that Rocco's failure to ask the position of the train was only an element in determining his general negligence, but that if the rule had directed him to wait where he was, the action would have failed.

In the Rocco Case the accident occurred at a blind curve, where the court held it was the duty of the motorman to give warning. This was a controlling feature of that case. The view of the track in the instant case was unobstructed. Whether Rocco should await the arrival of the train was a matter for his decision. Hanson had a continuing duty to clear for the passenger he knew was opposing him. He could only clear at sidings provided, the locations of which he knew. As a part of such duty to clear it was his duty to know when he proceeded whether he could reach such siding with safety. We deem the Rocco Case inapplicable to the situation in the instant case.

The order of the trial court sustaining defendant's demurrer to plaintiff's evidence is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and DAVISON and DANNER, JJ., concur.