## HENWOOD v. COBURN.
### No. 13613.

Circuit Court of Appeals, Eighth Circuit.
Jan. 15, 1948.

Wayne Ely, of St. Louis, Mo. (John W. Murphy, of St. Louis, Mo., on the brief), for appellant.

Roberts P. Elam, of St. Louis, Mo. (Joseph B. McGlynn of East St. Louis, Ill., on the brief), for appellee.

Before GARDNER, THOMAS, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The administratrix of James F. Coburn's estate sued the trustee of the St. Louis Southwestern Railway Company (commonly known as the "Cottonbelt") under the Federal Employers' Liability Act, § 1 et seq., 45 U.S.C.A. § 51 et seq., for negligence causing Coburn's death. The defense was a denial of negligence and a charge that the death was due solely to Coburn's own lack of care, failure to perform his duties and violation of company rules. The jury returned a verdict for the plaintiff, on which the court entered judgment, and the trustee has appealed.

· Coburn was conductor of a freight train whose caboose was struck by a passenger train on Cottonbelt's mainline track in the yards at Pine Bluff, Arkansas, about a mile north of the depot. The freight train, whose terminus was Pine Bluff, had come into the yards from the north at 12:28 a. m. on February 14, 1945, and had been ordered to wait on the mainline track until the yardmaster was able to clear a yard track for it. Coburn and his two brakemen, Story (flagman) and Wilbanks (swingman), remained in the caboose.

At 12:45 a. m., according to Wilbanks (who was a witness for plaintiff), Coburn with his watch in his hand approached Story and Wilbanks and reminded them that the passenger train was due out of Wilkins (3 miles north) at 1:06 a. m. Wilbanks further said that a minute or two thereafter Story picked up a white lantern, a red lantern with torpedoes attached to it, and some fusees, and started out the rear door of the caboose. He also claimed that he saw Story's lantern moving northward up the mainline track and that Coburn too was in a position in the car where it was possible for him to observe

Story. Within a few minutes, Coburn went to his desk, which was in the front end of the caboose facing the outside wall, picked up some papers, and appeared to Wilbanks to be completing his reports.

At 1:10 a. m., the engineer began to move the freight train forward toward a yard track, which by that time had been cleared, and just after the train started up, according to Wilbanks, Story came through the rear door of the car and proceeded to the stove which was located in the direction of Coburn's desk. Without any conversation passing between them, Wilbanks then went down the aisle to the rear door, picked up a fusee, and stepped out on the platform of the caboose. At the time Story entered the car, Wilbanks testified that he saw a fusee, which he assumed had been set by Story, burning on the track, north of the caboose. He said, however, that he did not notice whether the fusee was still burning after he went out on the platform. The freight train was a long one, of 77 cars, and Wilbanks claimed that he intended to use the fusee, which he took with him as he went out on the platform, in signalling the engineer when the rear end of the train had cleared the cross-over switch and was on the yard track.

Wilbanks had been on the platform several minutes, as the freight train was moving forward, when he saw the headlight of the passenger train as it passed an office shack that was located near the north end of the yards. The mainline track was straight for a distance of about three-quarters of a mile south of the office shack and then curved toward the southwest. The freight train had been standing on the curve and was proceeding forward on it. Right after the engine of the passenger train passed the office shack, Wilbanks heard two torpedoes explode. He took it for granted that the passenger train would heed this signal but observed that it was not slackening its speed. He hastily lit his fusee, waived it in attempted warning, shouted to Coburn and Story in the caboose, and then got off the car before the passenger train struck it.

The caboose was shattered and Coburn was hurled out of it, receiving injuries which caused his death. Story was found lying in the cupola of the caboose, which was jolted off the car, but he was not fatally injured. He was present at the trial but was not used as a witness by either side. The engineer on the passenger train was killed. The testimony of the fireman of the passenger train, whom the trustee called as a witness, revealed that the passenger train was 6½ minutes late out of Wilkins and that as it passed that station the engineer indicated to the fireman that he expected to bring the train into Pine Bluff only a minute behind its regular schedule. It was regularly due at Pine Bluff at 1:15 a. m. Thus, the train passed through Wilkins at 1:12½ a. m., and the engineer was undertaking to make the 4-mile run from Wilkins, through the yards at Pine Bluff, and to the Pine Bluff depot, in 3½ minutes.

 The trustee's first contention here is that plaintiff failed to make a case for the jury and that the trial court therefore erred in refusing to direct a verdict. It is argued that the testimony of the many witnesses (all employees) of the trustee, that they heard no torpedo explode and saw no fusee burning, made Wilbanks' testimony on this point incapable of belief; that it therefore was required to be held that Story did not set out any torpedoes or fusees as a signal to the passenger train; that Coburn, in not seeing or making certain that torpedoes and a fusee were set out by Story, had failed to perform his duties as conductor under company rules and trainmen's practice; that, beyond this, the situation was one where, even if Story did set out topedoes and a fusee, with the passenger train so shortly due, he should have been required to stay out on the track until the freight train cleared the main line, so he would be able to flag the passenger train by waving his lantern or a fusee, and it was Coburn's duty to see that he so remained; that, in not sending Story back out when he came into the caboose (if in fact he ever had left the caboose), Coburn equally failed to perform his duties as conductor under company rules and trainmen's practice; that either or both of these failures by Coburn to perform his duties must be regarded as the sole proxi-

mate cause of the passenger train striking the freight train and of Coburn's death; and that Coburn's administratrix therefore as a matter of law was not entitled to recover against the trustee.

The court did not err in denying the trustee's motion for a directed verdict.

The mere fact that 20 employees, on the passenger train and at scattered points in the yards, with varying opportunities for hearing and seeing, had not heard any torpedoes or seen a fusee, did not permit of a ruling as a matter of law that Story had failed to set out torpedoes and a fusee, in view of Wilbanks' positive testimony to the contrary. The situation was simply one of contradiction between witnesses in the exercise of human senses and on the basis of varying occasion and opportunity, and not one of legal disproof of testimony by some absolute such as physical facts. The court may not take a case from the jury merely because it rests on the testimony of what a single witness has seen and heard and is disputed by what numerous opposing witnesses have seen and heard. Cf. Union Pac. R. Co. v. James, 8 Cir., 56 F. 1001; Atchison, T. & S. F. R. Co. v. Condos, 8 Cir., 30 F.2d 669; Richardson v. City of Boston, 19 How. 263, 268, 269, 60 U.S. 263, 268, 269, 15 L.Ed. 639; Phoenix Mut. Life Ins. Co. v. Doster, 106 U.S. 30, 32, 1 S.Ct. 18, 27 L.Ed. 65. Such a conflict, where the testimony of the single witness is of a direct and positive nature, presents a question not on legal sufficiency but on probative value of the evidence (credibility and weight), which it is the province of the jury and not the court to resolve. United S. S. Co. v. Barber, 6 Cir., 4 F.2d 625, 626, 627.

■ Beyond this, even if it were a fact that Story did not set out torpedoes and a fusee, this neglect by Story could not on the evidence be declared as a matter of law to be so primarily chargeable to Coburn that the court would be entitled to rule that Coburn's death was occasioned solely by his own failure to perform his duty. Under the company rules and on the testimony as to trainmen's practice, the court did not have a right to hold that Coburn legally had an absolute duty in the situation to follow up the flagman or keep his eyes upon him, after he knew that Story had gone out (if such was the fact) with his signalling equipment to protect the train. Similarly, the court had no right to hold as a matter of law that Coburn was chargeable with knowledge of whether Story returned to the caboose and that his failure to send Story back out on the track (whether he actually knew of Story's return or not), in order to be able to flag the passenger train until the freight train had cleared the mainline track, was the sole efficient cause of his death. (The evidence was such as would permit of a finding that Coburn was not aware of Story's return.) Furthermore, if Wilbanks' testimony that Story had set out torpedoes and a fusee was believed, it could properly be found that the engineer of the passenger train was guilty of proximate negligence in not detecting the torpedoes and the fusee, so that there also would have been no right to declare as a matter of law, even if Coburn was aware of Story's return, that his failure to send Story back out must be regarded as the sole proximate cause of his death.

■ The company rules provided that "Both the conductor and the engineman are responsible for the safety of the train and the observance of the rules, and, under conditions not provided for by the rules, must take every precaution for protection"; "The general direction and government of a train is vested in the conductor, and all persons employed on the train must obey his instructions"; "When approaching and passing through stations or yards, * * * and other places where safety requires, conductors and brakemen must, when practicable, station themselves where they can observe and transmit signals and assist in stopping train, if necessary";[1] "Conductors

[1] These duties of conductors and brakemen, from the language of the rule, would appear to have relation to the movement of their own train. In any event, Coburn's failure to go out on the rear platform of the caboose, when the freight train started to move forward, could not as a matter of law be declared to be the sole proximate cause of his death, and the less so since Wilbanks had gone out on the platform to perform the duties involved under the rule,

must not allow other duties to interfere with the proper protection of their train, and must require their flagman to act promptly and in accordance with the rules"; "When a train stops under circumstances in which it may be overtaken by another train, the flagman must go back immediately with flagman's signals a sufficient distance to insure full protection, placing two torpedoes, and when necessary, in addition, displaying lighted fusees";[2] "When recalled and safety to the train will permit, he [flagman] may return"; "When the conditions require, he will leave the torpedoes and a lighted fusee"; "When a train is moving under circumstances in which it may be overtaken by another train, the flagman must take such action as may be necessary to insure full protection. By night, or by day when the view is obscured, lighted fusees must be thrown off at proper intervals."[3]

It will be noted that these provisions do not contain prescriptions for the doing of some specific act by Coburn in the situation presented.[4] The only prescriptions involved are general ones, such as that conductors "must take every precaution for protection", and that they "must require their flagman to act promptly and in accordance with the rules." There is, however, a definite prescription as to a flagman that, when a train is stopped under circumstances in which it may be overtaken by another train, he must go back with flagman's signals a sufficient distance to enable him to protect the train and must set out two torpedoes (leaving them, even after the train starts, when conditions require), as well as display lighted fusees if necessary. The evidence shows that flagmen were fully schooled in the performance of this duty by the company, so that, outside of assuring himself (as the evidence would warrant a finding that Coburn had done here) that the flagman had gone out with his signalling equipment, it could not be declared as a matter of law that the conductor had a specific initial protective task to perform which he had failed to do in the present situation. Under the rule, it was the flagman's duty to go back up the track with his signalling equipment and take the steps prescribed for protecting the train. It was his duty to remain out as long as safety to the train required. On the evidence in the record, if he was sent out by the engineer, he was not supposed to return until he was given a recall signal.[5] The witnesses for both sides agreed that, as a matter of trainmen's practice and proper protection in the present situation, Story should have stayed out until the freight train had cleared the mainline track. They also all further agreed that, if Coburn knew that Story had returned, Coburn ought in the situation to have required him to go back out again.

But none of this would permit the court to declare as a matter of law that

---

and further the evidence did not show that Coburn could have done anything on the platform at that time which the court could hold legally would have prevented the collision.

[2] There was testimony that this rule did not have application to stops in yards, except where, as here, a superior train was known to be due over the same track within such time as to require the taking of these protective measures.

[3] On the evidence, it would have been entitled to be found that the provision for progressively dropping lighted fusees was not intended to have application to trains in yards, and the trustee's answer did not seek to rely on this provision.

[4] While the rules did not in express terms provide that a conductor was required to see that a flagman left the train with his signalling equipment when it was necessary to protect the train,

all the witnesses agreed that, as a matter of interpretation, instruction and practice, a conductor owed this specific duty. Whether Story actually left the caboose with his signalling equipment (which the trustee disputed) was on the evidence a question of fact for the jury, and the court properly instructed on this issue, as referred to later in the opinion.

[5] The engineer of the freight train, as a witness for the trustee, testified that he had blown the engine whistle as a signal for the flagman to go out but that he had not blown any recall whistle. Wilbanks testified that he had not heard the engineer signal for the flagman to go out, and that in any event, when Story went out, it was pursuant to Coburn's reminder that the passenger train was soon due and not to any engineer's signal.

what Coburn did or did not do was the sole proximate cause of his death. On the evidence, there were factors involved which clearly made the questions of negligence and proximate cause matters for the jury. Thus, on the circumstances, there was the question whether Story ever in fact had left the caboose. And, if Story did leave the caboose with his signalling equipment, as Wilbanks claimed, there was the question whether he actually had set out torpedoes and a fusee, and, if so, whether the engineer of the passenger train had been guilty of negligence in failing to detect them. And on Story's return, there was the question whether Coburn knew that Story had come into the caboose and, if so, whether by sending Story back out, in the time remaining, the opportunity for signalling, and the probability of such signalling stopping the passenger train (if the jury believed that there was no other operative negligence in the situation), Coburn might have succeeded in preventing the collision so that his failure thus to act might in the situation be found to be the sole efficient cause of his death. Only, of course, if Coburn's actions or failure to act were found to be the sole efficient cause of his death would the trustee be relieved of liability, for mere concurrent or contributory negligence on Coburn's part would not be a bar to a recovery under the Act. 45 U.S.C.A. § 53.

The questions which we have suggested are intended to be indicative merely. In connection with what has been said, there is to be borne in mind also the apparent emphasis in the recent decisions of the Supreme Court that questions of negligence and proximate cause under the Federal Employers' Liability Act are generally for the jury; that the field of jury inference is a broad one and only requires a rational possibility on the facts; and that a verdict is not necessarily one of speculation and conjecture because inferences are arrived at by the application of general experience and common reaction to the evidentiary situation. See Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. ——; Tiller v. Atlantic Coast Line R. Co., 323 U.S. 574, 65 S. Ct. 421, 89 L.Ed. 465; Tennant v. Peoria & P. U. R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444. And also, as previously suggested, if an employer's negligence is in any part the efficient cause of an employee's injury, the employer is liable under the Act. 45 U.S. C.A. § 54; Fleming v. Husted, 8 Cir., 164 F.2d 65, 67, 68. " 'It is only when plaintiff's act is the sole cause—when defendant's act is no part of the causation—that defendant is free from liability under the act.' " Grand Trunk Western R. Co. v. Lindsay, 233 U.S. 42, 47, 34 S.Ct. 581, 582, 58 L.Ed. 838, Ann.Cas.1914C, 168, approving a trial court's instruction.

The trustee's brief cites the line of cases that purport to hold that an employee's failure to obey an applicable standing rule or specific order promulgated for his safety is as a matter of law a bar to his recovery under the Act. These cases have been referred to and discussed by us in the majority and the dissenting opinion in Chicago, St. P., M. & O. R. Co. v. Arnold, 8 Cir., 160 F.2d 1002. There is no occasion for us to enumerate them or to consider here whether as a basis for taking cases from the jury they ever really were sound under the language of the Act and in the light of the recent decisions of the Supreme Court cited above, except in so far as the facts in each of them can legitimately be said to demonstrate that the violation of the rule or order actually was the sole efficient cause of the employee's injury. In any event they are not applicable to the present situation. If they have any validity as a rule of law on the directing of verdicts, the bar which they set up at least extends no further than to violations of prescriptions for specific conduct. Judge Learned Hand expressed it thus in Gildner v. Baltimore & O. R. Co., 2 Cir., 90 F.2d 635, 637: "It is only when the rule prescribes specific conduct that disobedience has so grave a consequence [as to constitute a bar, distinct from the effect of contributory negligence generally] * * *. Indeed to hold that by enacting general admonitions of care as rules, a road can make all carelessness a bar, would repeal section 53 of title 45, U.S. Code (45 U.S.C.A. § 53)." Cf. also Norfolk & W. Ry. Co. v. Riggs, 6 Cir., 98 F.2d

612, 613; Atchison, T. & S. F. R. Co. v. Ballard, 5 Cir., 108 F.2d 768, 771. The rules that are here involved, as we have previously stated, were not prescriptions of definite acts or other specific conduct on Coburn's part in the situation.

For the reasons which we have set out, it was not error to deny the trustee's motion for a directed verdict.

The trustee further contends that, if the case was entitled to go to the jury, the court's charge was erroneous and there was error also in refusing to give the trustee's requested instructions. We find no error in the court's instructions as far as they went, but we think the court erred in refusing to give the trustee's requested instruction No. 2 or a restatement of it. The only specific issue on the facts which the court's instructions undertook to place before the jury was whether Story ever had left the caboose, it being one of the trustee's contentions that he had not. The instructions told the jury that on the evidence it was admitted that in the situation involved Coburn as conductor owed the duty of requiring his flagman "to leave the caboose with flagman signalling equipment * * * and * * * to see that the flagman left the caboose sufficiently in advance of the time the passenger train was due so that the flagman could give adequate and proper signals to enable the engineer of the passenger train to stop the passenger train before it ran into or collided with the caboose", and that therefore "if you find and believe from the evidence that, when his train came into a position of peril or danger as described in the evidence here, the conductor, James Coburn, did not order and require the flagman to leave the caboose with flagging equipment sufficiently in advance of the approaching train, to give proper and adequate signals to enable the engineer of the approaching train, in time, to stop before coming into collision with deceased's train, and that solely as a result of such failure to make such requirement of the flagman, if you find he did not do so, then your verdict will be for the defendant." The only other instruction which the court gave, in relation to the trustee's contention that Coburn's death was due solely to his own negligence, was a general one that "In order for this defense to prevail, you will be required to find from the evidence that there was no other negligence on the part of the defendant or any of its officers, employees, or agents that proximately caused the collision in question and that the plaintiff's intestate was guilty of the sole and only negligence that caused the collision."

The trustee's requested instruction No. 2 was as follows: "And you are also instructed that even if you should find and believe from the evidence that the flagman left the caboose in time to flag the passenger train, still if you further find that he returned to the caboose at a time when there was danger of a collision between the passenger train and freight train number 681, and if you find that conductor Coburn permitted him to return to the caboose and to remain in the caboose under such circumstances, and if you find that conductor Coburn was negligent in so permitting the flagman to return to the caboose and to remain in it, and that such negligence was the sole cause of the collision between the two trains, then you are instructed that the plaintiff is not entitled to recover and your verdict must be for the defendant."

The trial court apparently was of the opinion that Coburn's failure to send Story back out, if he knew that Story had returned, could not possibly in the situation have been a sole cause of the collision, in that, if Story had failed to set out torpedoes and a fusee, he was guilty of negligence, whose effect the trustee could not escape, and that, on the other hand, if Story actually had set out torpedoes and a fusee, the engineer of the passenger train was guilty of negligence in not detecting them, whose effect the trustee equally could not escape. But we think it was the right of the jury in the situation and not the right of the court to say whether Story was guilty of negligence, if he did not leave torpedoes on the track after the freight train began to move forward, or, if the torpedoes were there, whether the engineer was guilty of negligence in not having detected them. This right to resolve the question of negligence existed for any purpose in the case.

In resolving the question as to Story's negligence, the jury would be entitled to consider that, while the rules provided for the setting out of torpedoes when a train was standing still, they did not provide absolutely for the leaving of such torpedoes on the track after the train started up but only "when conditions require", and that in the present situation, on the testimony of Wilbanks, the freight train began to move toward the cleared yard track five minutes before the passenger train was due. And similarly in resolving the question as to the engineer's negligence in not detecting the torpedoes, if they were left on the track, the jury would be entitled to consider that no other member of the passenger crew had heard the torpedoes explode; that none of the other numerous witnesses who were in the yards had heard them either; and that, on the aspect of the engineer's failure to see the fusee, if one was set out, Wilbanks' testimony, that the fusee was burning when Story returned to the caboose but that he did not notice it after he went out on the platform, made it possible to believe that the fusee had burned out by the time the passenger train approached, since this, according to Wilbanks' testimony, was more than 25 minutes after Story had started out from the caboose with his signalling equipment.

The point we are trying to make is that the considerations which presumably prompted the trial court to refuse to give the trustee's requested instruction No. 2 were not questions which the court had a right to resolve in favor of the administratrix as a matter of law in deciding whether the requested instruction should be given or refused. As we have pointed out, under the teaching of the recent decisions of the Supreme Court, the domain of the jury in circumstantial cases under the Federal Employers' Liability Act may not be narrowly bounded, and the settling of any question of negligence or proximate cause, where more than one rational possibility is involved on the evidentiary facts, is exclusively within its field. This is true for every purpose in the case, and, in according the jury its inherent function, recognition of the right in one aspect or incident of a case is as important as in another.[6]

As a practical matter, it might perhaps be argued that a jury would not be likely in the situation to find that there was no negligence on the part of either Story or the passenger engineer, so as to relieve the trustee of liability. That may be so, but the fact is of no relevance here. It is not the function of an appellate court to dispose of errors in trial process on the basis of what it thinks a jury will do on another trial. Furthermore, no one has yet been able with infallible certainty to predict a jury's verdict.

As a matter of legal test, a jury in the latitude which is open to it might legitimately infer from the facts that, if Coburn knew that Story had returned to the caboose and failed to send him back out (which the witnesses on both sides agreed that a conductor should do in such a situation), this neglect of duty could have constituted the sole efficient cause of Coburn's death, if the jury should be of the view that on the circumstances which we have set out neither Story nor the engineer of the passenger train ought to be regarded as having been negligent. The trustee was therefore, we think, entitled to have had this theory submitted to the jury, as he sought to have done by his requested instruction No. 2. What we recently said in another case may be repeated, that, "as against a mere general or abstract charge, a party is entitled to a specific instruction on his theory of the case, if there is evidence to support it and if a proper request for such an instruction is made." Chicago & N. W. Ry. Co. v. Green, 8 Cir., 164 F.2d 55, 61. The requested instruction here was in no way legally incorrect but, if the trial court desired to amplify or clarify it in any way, it of course was at liberty to do so.

None of the trustee's other contentions would entitle him to a reversal, and we shall not extend this opinion by discussing them.

The judgment is reversed and the cause remanded for a new trial.

---

[6] Cf. Callen v. Pennsylvania R. Co., 68 S.Ct. 296.