ATCHISON, TOPEKA & SANTA FE
RY. CO. v. HICKS.

No. 35628.   June 23, 1953.

*258 P. 2d 672.*

Rainey, Flynn, Green & Anderson,
Oklahoma City, for plaintiff in error.

Rittenhouse, Hanson & Green, Okla-
homa City, for defendant in error.

O'NEAL, J.   The parties will here
after be referred to as they appeared
in the lower court.

This action is founded upon the pro-
visions of the Federal Employers' Lia-
bility Act, 45 U.S.C.A., §51 et seq.

Upon the motion of the plaintiff be-
low, the trial court instructed the jury
that plaintiff had established liability
of the defendant, thus leaving solely
to the jury the question of whether the
proof submitted established defendant's
plea of contributory negligence; and the
further question as to the amount of
plaintiff's recovery.

The jury returned its verdict in favor of the plaintiff upon which judgment was rendered. The appeal is from the court's order denying defendant a new trial.

Plaintiff's amended petition substantially alleged that plaintiff, on December 22, 1950, was an employee of the defendant, Atchison, Topeka & Santa Fe Railway Company, a corporation, and was engaged in work in the furtherance of interstate commerce. That on said date plaintiff was riding in a steam engine on defendant's railway track in Purcell, Oklahoma, when a Diesel engine operated by the defendant collided with the engine in which plaintiff was riding, causing plaintiff to be injured. Plaintiff pleaded the rules of the defendant corporation with reference to movement of trains and engines, which rules in part, provide:

" * * * trains or engines using other than main track must proceed prepared to stop short of train, obstruction or switch not properly lined * * * In case or doubt or uncertainty, the safe course must be taken * * *."

"Firemen must assist in keeping a constant lookout and must instantly give the engineman notice of any obstruction or signal they may perceive."

That one Yost, engineman on the Diesel engine, negligently violated the rules, in that although he could not see the steam engine occupied by plaintiff, he failed to reduce the speed of the Diesel engine, and failed to maintain proper lookout for signals given him by his fireman helper, one "Smilie", and thereby was unable to stop short of obstructions on his course or to stop it short of a switch which was not properly aligned for his passage. That one Smilie, fireman on the Diesel engine driven by Yost, negligently violated said rules in failing to keep a lookout for obstructions under the engine's course; and failed to give instant warning to Yost of the proximity of plaintiff's steam engine or of the alignment and position of the switch point over

which the steam engine was about to pass; that Yost negligently operated the Diesel engine at the time and place at a speed of 15 miles per hour; and failed to keep a reasonable and proper lookout so that signals, if any, given by Smilie might be seen and understood and so that right of way might have been given to the plaintiff's steam engine; that if Smilie gave Yost a signal requiring reduction in speed of the Diesel engine, or stopping it, that Yost negligently failed to see or negligently failed to heed such signal; that the switch point over which the steam engine moved, when the Diesel engine collided with it, was aligned for it and the colored signal gave warning to Yost and Smilie that plaintiff's steam engine had pre-empted the tracks, but that said Yost negligently failed to yield the right of way to plaintiff's engine.

Plaintiff avers that the accident resulted from the fault of the defendant which directly and proximately resulted from the accident and injuries complained of.

To the amended petition defendant filed its amended answer denying the material allegations of the petition and for affirmative defense it alleged that the accident complained of was due solely to the negligence on the part of the plaintiff Hicks, as follows:

(a) That it was the duty of the plaintiff as fireman on the steam engine at the time and place of the accident to keep a lookout for other engines upon the tracks and to warn his engineer in time to allow him to stop and avoid a collision; that plaintiff failed in these duties and that his negligence to keep a proper lookout and to warn his engineer was the sole and proximate cause of the accident.

(b) That the plaintiff knew, or in the exercise of reasonable care should have known, that the plaintiff's engineer could not see the Diesel engine approaching and that plaintiff knew, or in the exercise of reasonable care

should have known, that plaintiff's engineer depended upon plaintiff to keep a lookout and warn him of the approaching Diesel engine in time to slow down or come to a stop to avoid the collision; that plaintiff failed to give such warning, and that his negligence in failing so to do was the sole and proximate cause of the accident.

(c) That although plaintiff had an unobstructed view of the track for several hundred feet upon which the Diesel engine was approaching, he failed and neglected to warn the engineer of the steam engine upon which plaintiff was riding of the approach of the Diesel engine until it was too late for his engineer to apply the brakes and to avoid the collision; that his negligence in failing to warn his engineer until it was too late to avoid the collision was the sole and proximate cause of the accident.

(d) That the negligent acts of plaintiff and the negligent failure to perform his duties as fireman, contributed to the accident, and that such acts of negligence and contributory negligence resulted in plaintiff's injuries.

In determining whether there is sufficient evidence of probative force to establish a case under the Federal Employers' Liability Act, we measure it by the common-law concept of negligence. The substantive limitations upon the common-law negligence actions, as for instance those pertaining to assumption of risk and negligent fellow servants, must be enforced by the state court irrespective of the local law. The Federal Act does not, however, relieve the plaintiff from the burden of establishing that the defendant was negligent and that such negligence was the proximate cause in whole or in part of the accident complained of. The defense of contributory negligence, if established, does not defeat the plaintiff's recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to the plaintiff. We are therefore confronted with the duty of determining whether the proof warrants a finding of fault and casualty sufficient to sustain the court's peremptory instruction to the jury that plaintiff established liability, or whether the evidence established facts of probative force warranting their submission to the jury as questions of controversial facts.

The other question raised is whether the instructions given adequately submitted the issues that were supported by proof to the jury.

A summation of the facts are these: Mr. Hicks had worked as a fireman for the Rock Island Railroad Company in 1948. In September, 1950, he was employed as a fireman by the Santa Fe Railway Company, working in the yards at Purcell, Oklahoma. On December 22, 1950, a steam engine which was headed north was backing south upon a track leading to the roundhouse; Hicks was sitting on the left side of the cab on the fireman's seat box facing, when he turned his head, in the direction in which the engine was moving. The engine as it neared the switch was moving about five miles per hour. At or near the switch point on the west of the track a light indicated that the switch was aligned for the steam engine. Hicks first observed the Diesel engine as it aproached the curve on the west track indicated in the Exhibits 1 and 2 of the record. As the Diesel engine came into Hicks' view from behind several gondola cars, the rear end of the Diesel was 150 feet from the switch point; and the rear end of the steam engine was approximately even with the switch points. In this situation Hicks' engineer asked him if the switch was aligned for the steam engine and Hicks advised his engineer that it was. When Hicks determined that the Diesel was not going to stop he told his engineer to "hold it." To "hold it" meant to stop it. At this moment he thought the Diesel engine was 40 feet from his track. Immediately before Hicks gave the "hold it" command, he observed

Smilie, the helper on the Diesel engine, drop off of the Diesel and give the Diesel engineer a stop signal. The signal was not observed or was unheeded and the Diesel hit the steam engine about two feet back on the tank from the front of the tender located directly behind the cab of the engine. Hicks testified that he had operated both Diesel and steam engines and could form an opinion of their speeds; that when he first saw the Diesel 200 feet away, up to the time it was within 40 feet of the steam engine, the Diesel was traveling at the rate of 15 miles per hour; that he first formed an opinion that the Diesel would not stop when it had reached a point 40 feet away at which time he told his engineer to "hold it."

After the collision Hicks was taken to a hospital in Purcell, by the foreman or superintendent of the switch yards. He, apparently, had suffered some facial cuts and a bump upon his head. The company's physician sewed up the cuts and gave Mr. Hicks first aid treatment. A week after the accident Hicks returned to work at his former job. He worked until January 31, 1951, for the Santa Fe Railway Company, then resigned his job and went to work for the Rock Island Railway Company during February and March, in the capacity of a fireman. He then quit working as he felt he could no longer perform his duties because of physical impairment occasioned by the accident.

In support of his physical impairment several physicians testified at length with reference to Mr. Hicks' injuries and his physical condition, and the medical treatment they prescribed for him. On direct examination Mr. Hicks stated that he did not know what happened to his engine after the accident; that he didn't remember what happened to him between the time of the collision and the time he was taken to the hospital because he was unconscious.

On cross-examination he stated that Bill Pugh, the defendant's foreman, took him to the hospital and as he got into Pugh's truck he asked Pugh about the cut on his lip. The proof supports Mr. Hicks' statement that his engineer was sitting on the east side of the engine cab, and that his engineer could not see the west track or the Diesel engine as it advanced, and, therefore, that his engineer had to depend wholly upon him to keep a proper lookout for obstructions on the track. With reference to the gondola cars it appears that they were stationed upon a track east of the track upon which the Diesel was approaching, and may have partially obstructed Hicks' view up to the time the Diesel reached the curve on the track indicated by plaintiff's Exhibits 1 and 2 in the record.

On December 28, 1950, a few days after the accident, a claim adjuster for the defendant company obtained a statement from Mr. Hicks in which he stated that when he first saw the Diesel engine on the curve it was 50 to 100 feet away; that the hostler helper on the Diesel got off and gave a stop sign to the hostler at a time when the Diesel was far enough away to stop had the hostler acted on the signal. An additional portion of the written statement reads:

"I did not say anything to my engineer at the time as I did not want him to stop right then as the other engine would have hit in the engine right at the cab where I was riding, but I did holler and he grabbed the brake valve. In the accident, I received a cut upper lip requiring 12 stitches, bump on forehead, bruised right collar bone and right side bruised just above pelvic bone. I was attended by Dr. Bill McCurdy at Purcell, Okla., and if he releases me, I will return to work Saturday, Dec. 30, 1950."

On January 18, 1951, Mr. Hicks prepared and filed a written report of the accident. That report discloses that he was asked whether the accident resulted from any defect in the track or any carelessness on the part of the company or anyone in the company's

employ tending to cause the accident, to which he responded:

"A. It lays between the Hostler and Hostler Helper or both. I did see a stop sign given which was good enough for me as we work on signals and signals only."

With reference to his injuries, he stated: "Cut on upper lip into nose, bad bruise right side."

This resume of plaintiff's evidence presents the proof submitted save the medical testimony.

Counsel for the plaintiff at the close of the case dictated into the record the following motion:

"The plaintiff rests and at this time moves the Court to direct the jury to return a verdict in favor of the plaintiff on the issue of liability and to submit to the jury only the question of damages. The motion is made upon the grounds it appears conclusively from the evidence that this accident and the resulting injury to plaintiff was the result of negligence of the defendant."

In commenting upon plaintiff's motion, the trial judge stated:

"I don't believe I can go that far with you. I don't think you have made any proof on this sole proximate cause idea but I think you have here the question of what contributed. He has two defenses, one based on whether it was the sole proximate cause of injury, and that part of it, on the basis of the evidence as its stands now, the Court will sustain a demurrer to that part of his answer, whatever it amounts to, because that is an affirmative defense there, but as far as the contributory negligence is concerned, on the basis of his own testimony, I feel that will have to be left to the jury because that was brought in on the basis of his own testimony."

An analysis of the statement discloses that the trial judge did not think the motion should be sustained because plaintiff failed to establish proximate cause. In the last portion of that statement the judge stated that insofar as the defense of contributory negligence is concerned, it must be submitted to the jury, because plaintiff's own testimony established his contributory negligence. A reasonable interpretation of the judge's statement indicates he held to the opinion that plaintiff's proof did not make out a case of fault and causation, and, therefore, plaintiff had not sustained the burden of proof required to make out liability. A further inference is that the judge was of the opinion that plaintiff's own version of the facts indicated plaintiff himself was guilty of contributory negligence. The court, however, in instruction No. 4, told the jury that as to the question of liability, their verdict must be for the plaintiff. We find it dififcult to understand these incongruous views of the case.

To sustain the directed verdict on the question of liability, plaintiff here asserts that the trial court may direct a verdict for or against either party. It is not necessary to belabor the point, as under the Act this court and the Supreme Court of the United States, in its last analysis of a case under the Act, is the sole arbiter as to whether the plaintiff has or has not made out a submissible case as to negligence and as to causation.

This court has frequently held that where from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence, such question is properly for the jury. Gypsy Oil Co. v. Green, 82 Okla. 147, 198 P. 851.

The converse of this principle of law comes into play where disputed facts fail to establish primary negligence. The court then may either sustain a demurrer to plaintiff's evidence, or, in the alternative, grant a peremptory instruction. Hanson, Ex'x, v. Atchison, T. & S F. Ry. Co., 184 Okla. 480, 88 P. 2d 348.

Plaintiff cites numerous cases which hold that where the evidence is undisputed an instructed verdict may be

694

given. An examination of the cases discloses they are not applicable in a situation where there is conflicting evidence, upon the pivotal question of fault and whether the casualty is established; neither do we think plaintiff's suggestion tenable that the case of Bailey, Administratrix, v. Central Vermont Railway, Inc., 319 U.S. 350, 87 L. Ed. 1444, is an authority in support of the directed verdict in the instant case. The Bailey case simply holds that to deprive a railroad worker of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them. The teaching of that decision as we see it is to leave to the jury for its consideration cases where the facts, although of a doubtful character, might warrant the approval by the court of the verdict rendered. Neither can we subscribe to the suggestion that in all reasonable probability another jury might find that plaintiff made out a case of negligence and proximate cause. Disposing of a like contention, the court in Henwood v. Coburn, 165 F. 2d 418, said:

"That may be so, but the fact is of no relevance here. It is not the function of an appellate court to dispose of errors in trial process on the basis of what it thinks a jury will do on another trial."

As the standard of liability is negligence, the question is what a reasonable and prudent person would have done under the circumstances. Wilkerson v. McCarthy, Trustees, 336 U.S. 53, 61.

Where there is a debatable issue on which fair-minded men might differ, it becomes a question for the jury. Bailey v. Central Vermont Railway, Inc., 319 U.S. 350, 353.

We find in the proof sufficient facts and circumstances raising debatable questions on whether primary negligence was established. We cannot say that the proof was such that all reasonable men might not come to opposite conclusions.

As the narrative statement shows, plaintiff made a written report of the accident under date of January 28, 1950, in which he stated that he "saw this engine coming as it was on curve some 50 to 100 feet before it got to us." In direct examination he stated that when he first saw the Diesel it was approaching the curve on the west track. He then stated that when the Diesel came from behind the gondola cars the rear end was approximately 150 feet from the switch points or where the two tracks intersect. He did not, however, at that time give his engineer any warning. He stated:

"I did not say anything to my engineer at the time as I did not want him to stop right then as the other engine would have hit in the engine right at the cab where I was riding."

As we have shown, supra, both by the plaintiff's and the defendant's pleadings, as well as the proof submitted, it was the plaintiff's duty to keep a constant lookout and instantly give his engineer notice of any obstruction or signal he might perceive.

In Henwood v. Coburn, supra, the court said:

"* * * the domain of the jury in circumstantial cases under the Federal Employers' Liability Act may not be narrowly bounded, and the settling of any question of negligence or proximate cause, where more than one rational possibility is involved on the evidentiary facts, is exclusively within its field."

The teaching of the decisions of the Supreme Court are to the effect that the Act does not make the employer the insurer of the safety of his employees while they are on duty. The basis of the employer's liability is his negligence—not the fact that injuries occur. The choice of conflicting versions of the way the accident happened, the decision as to which witness was telling the truth, the inferences to be drawn from uncontroverted as well as controverted facts, are questions for the

jury. Ellis v. Union Pacific Railroad Co., 329 U.S. 649.

That in order to recover under the Act, it was incumbent upon the plaintiff to prove that defendant was negligent and that such negligence was the proximate cause in whole or in part of the accident. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 67.

However, the court is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions, or because the court regards another result as more reasonable. Tennant v. Peoria & P. U. Ry. Co., supra.

If the appellate court entertains the view that the trial court erred in holding that there was not sufficient proof to support the charge that defendant's negligence was the proximate cause of the accident and injury, it may reverse the case. The fact that fair-minded men might likewise reach different conclusions on the question of negligence emphasizes the appropriateness of leaving the question to the jury. Ellis v. Union Pacific R. Co., 329 U.S. 649; Coray Ancillary Administrator v. Southern Pac. Co., 335 U.S. 520, 523; Carter v. Atlanta & St. Andrews Bay Railway Co., 338 U.S. 430, 433.

We need not elaborately consider defendant's contention that the court's instruction No. 2 was erroneous. That instruction reads:

" * * * For further defense, defendant alleges that because of the negligent acts and failure as above set forth, plaintiff was guilty of contributory negligence, and that except for such acts of negligence and contributory negligence upon the part of plaintiff, the accident and resulting injuries, if any, to plaintiff would not have occurred."

There were no acts of contributory negligence previously set forth as the preceding instruction No. 1 simply outlined the various grounds contained in plaintiff's amended petition upon which he based his cause of action. The defendant's amended answer to which we have referred, supra, alleged the specific grounds upon which defendant relies upon its plea of contributory negligence. Clearly, defendant was not relying upon plaintiff's petition to support its plea and defense of contributory negligence. It is the duty of the trial court to correctly instruct the jury on contributory negligence as those facts are pleaded and as supported by reasonable proof. Roadway Express, Inc., v. Baty, 189 Okla. 180, 114 P. 2d 935; Van Antwerp v. Tuller, 202 Okla. 366, 214 P. 2d 237.

We are of the view, and so hold, that the trial court erred in refusing to submit the controverted issues of negligence and proximate cause to the jury. We find substantial error in the court's instruction No. 2; therefore, the case is reversed, with instructions to grant defendant a new trial.

HALLEY, C.J., JOHNSON, V.C.J., and DAVISON and WILLIAMS, JJ., concur. WELCH, CORN, and BLACKBIRD, JJ., dissent.