**MISSOURI–KANSAS–TEXAS RAILROAD CO., a corporation, and Ernest A. Durbin, Plaintiffs in Error,**

v.

**John R. EDWARDS, Defendant in Error.**

No. 38422.

Supreme Court of Oklahoma.

April 18, 1961.

See, also, 361 P.2d 474.

Doerner, Stuart, Moreland, Campbell & Saunders, Tulsa, and William A. Thie, Denison, Tex., for plaintiffs in error.

Rucker, Tabor, Best, Sharp & Shepherd, O. H. "Pat" O'Neal, Wesley Whittlesey, Sapulpa, for defendant in error.

PER CURIAM.

In this action, defendant in error, John R. Edwards, hereafter referred to as "plaintiff", seeks to recover damages from the plaintiffs in error, Missouri-Kansas-Texas Railroad Co., hereafter referred to as "Katy", and Ernest A. Durbin, hereafter referred to as "Durbin", for personal injuries sustained upon an automobile in which plaintiff was a passenger being struck by one of Katy's freight trains at a point where Sheridan Road crosses Katy's railroad tracks in or near the east portion of Tulsa, Oklahoma. When plaintiffs in error are referred to collectively herein, they will be referred to as "defendants". Plaintiff also seeks to recover damages for medical expenses incurred and those which will be incurred because of serious and permanent injuries sustained by his wife, Carmen, who was also injured in the collision.

Plaintiff alleged in substance in his petition that the collision and the bodily injuries that he and his wife sustained as a result thereof were the direct result and proximate cause of Katy's and Durbin's, (who was the engineer on the freight train) negligence in that (1) defendants operated the train at a speed in excess of 40 miles per hour in violation of an ordinance of the City of Tulsa relating to the speed of trains traveling within the corporate limits of said city; that (2) Durbin failed to sound the whistle or ring the bell on the locomotive to the train at a distance of at least eighty rods from the crossing in violation of the statutes of this State; that (3) Katy failed to install adequate warning devices in addition to those contemplated by 66 O.S.1951 § 124, at the crossing which was unusually dangerous. In his original petition, plaintiff sought to recover damages in the amount of $285,137.30. By amendment to the petition he sought to recover damages in the amount of $325,804.85 and prior to trial he amended his petition instanter so as to seek damages in the amount of $750,804.85.

In their answer, defendants denied the allegations of plaintiff's petition. Defendants pleaded further that if plaintiff were injured his injuries were due to his negligence and that of his agent (and daughter, Darla) who was operating the automobile involved in the collision; that if defendants were negligent, plaintiff's negligence contributed to the collision and resulting injuries; that the collision was unavoidable.

The case was tried to a jury. The jury returned a verdict in plaintiff's favor in the amount of $650,000. From judgment on the verdict, defendants perfected this appeal.

The uncontroverted evidence which is thought pertinent to this appeal can be summarized as follows:

At the time the collision occurred, March 13, 1956, at approximately 8:40 a. m., a light rain was falling. The asphalt paving over which the automobile involved in the collision was being driven, was wet. The paving at and near the crossing was uneven and broken. Witnesses described the paving at said point as being "washboardy".

Katy owned the railroad tracks and the train. Durbin was its agent and engineer.

The automobile was owned and operated by plaintiff's daughter, Darla, who was the only child of plaintiff and his wife. Plaintiff's wife was the only other passenger in the automobile. She was seated in the middle of the front seat and plaintiff seated immediately to her right. Darla frequently passed over the crossing and was familiar

with same. The automobile approached the crossing from the south at a rate of speed of approximately 30 miles per hour.

At the point of the collision, Katy's tracks extend in a northwesterly-southeasterly direction. The train approached the crossing from the northwest. It was agreed that the train was traveling not less than 35 miles per hour as it approached the crossing. An ordinance of the City of Tulsa fixed the maximum speed at which trains should operate within its corporate limits at 25 miles per hour.

There was a hill to the west and south of the crossing, which hill crested approximately 300 feet south of the crossing. The hill served to obstruct the view of a northbound motorist to his left or northwest up the Katy's tracks until he reached a point near the crossing. The only warning device at the crossing was the customary "cross-bucks" which were placed on either side of the road at points approximately 46 feet from the crossing.

The corporate limits of Tulsa had been extended to the east and embraced the west portion of Sheridan Road but not the east portion of said road.

As a result of the collision, plaintiff and his wife sustained serious and permanent injuries.

In discussing the contentions of the parties, we will refer to other evidence that bears on said contentions.

There was competent evidence sustaining each of the heretofore referred-to alleged acts of negligence which were set forth in plaintiff's petition. The defendants, however, contend that the evidence fails to show that said acts of negligence on their part were the proximate cause of the collision and in the alternative urge that the trial court committed reversible error by permitting plaintiff to introduce prejudicial evidence which was incompetent and irrelevant; by failing to properly instruct the jury and by permitting plaintiff's counsel to make improper and prejudicial statements in his argument to the jury. Defendants also contend that the statutes creating the Superior Court of Creek County are unconstitutional and that said court was wholly without jurisdiction to try the instant case (this contention runs counter to our decision in Missouri-Kansas-Texas Railroad Co. v. Coryell, Okl., 346 P.2d 935), and that the verdict of the jury is excessive.

In support of their contention to the effect that negligence on their part was not the proximate cause of the accident, defendants refer to Darla's testimony to this general effect: At a point approximately 46′ to 97′ from the crossing she looked to her left (northwest) and then to her right (southeast) and then to her left. Upon looking to the left she saw the engine of the train; that when she first looked to her left she was traveling approximately 15 miles per hour.

A witness testified as an expert that an automobile traveling 15 miles per hour will travel 22′ per second; that an automobile traveling at said speed can be braked to a stop in 14′; that the period transpiring between the time that an operator sees an object which dictates application of his brakes and the application of same varies from $\frac{3}{4}$ths to one second; that as a rule an automobile traveling at 15 miles per hour will travel 15′ during said reaction period; that in the instant case a distance of approximately 8′ should be allowed for the rough condition of the pavement and the fact that it was wet.

Using the referred-to testimony as a premise, defendants argue that Darla could and should have braked her automobile to a stop in from 37 to 44 feet after becoming aware of the approaching train.

Defendants contend that Darla testified that she first saw the locomotive when her automobile was not less than 70′ from the crossing; that the locomotive was then not less than 400′ from the crossing; that since Darla should have braked her automobile to a stop in not less than 44′ after seeing the locomotive her negligent failure to stop her automobile before it reached the crossing was the proximate cause of the collision. Defendants contend that there is

no evidence contrary to the referred-to evidence upon which they rely. We are unable to agree.

Darla did not undertake to fix the exact number of feet that her automobile was from the crossing when she first saw the train. She was asked this question: "Can you fix the place where your car was between the utility pole (which was 97′ from the crossing) and the cross-buck sign (which was 46′ from the crossing) when you first saw the train?" to which question she answered: "No sir, I can't tell you. It somewhere in that vicinity but where I wouldn't know. I have no idea."

Darla testified that the brakes to her automobile were mechanically good and there is no evidence to the contrary. She also testified that she applied her brakes immediately upon seeing the train and that the braking action caused the wheels to lock. Her testimony in the last mentioned particular is corroborated by Durbin's testimony. The evidence shows that the automobile did not come to a stop until after it reached the crossing. In view of said evidence the jurors could have concluded that Darla's automobile was less than 37′ to 44′ from the crossing when she first saw the train for the reason that if she had seen the train at a greater distance, the automobile would have been braked to a stop before it reached the crossing.

After having reviewed the record, we are of the opinion that the matter of whether Darla saw the train in time to brake her automobile to a stop was a question of fact for the jury. We are, therefore, of the opinion that whether Darla's alleged negligence in said particular or the negligence of the defendants was the proximate cause of the collision was a question of fact for the jury. In the first paragraph of the syllabus to Chicago, R. I. & P. Ry. Co. v. Richerson, 185 Okl. 560, 94 P.2d 934, this was said:

"The question of the degree of care required of a railroad company to avoid an accident with a motorist at one of its highway crossings in a given situation, and the question of whether its failure to exercise the care incumbent upon it was the proximate cause of said accident, are questions for the jury where reasonable men may differ as to what facts the evidence establishes and the reasonable inferences to be drawn therefrom."

See also McBroom et al. v. Meyer, Okl., 303 P.2d 303.

Defendants contend that the trial court erred in permitting an expert witness to give an opinion as to the dangerous condition of the crossing. We quote the question and answer thereto that defendants complain of:

"Q. Based upon the examination you made on that day, the sight lines which you made, the study of the ground—I call it topography, that may or may not be right—and the road or track, do you have a judgment based upon the study you have made at these Universities and the experience you have had in 15 years as to whether or not that for vehicular traffic going north is a dangerous crossing?

"A. Yes, in my opinion it is a dangerous, hazardous crossing."

Defendants objected to the above question and answer on the grounds that same invaded the province of the jury and called for a conclusion on the part of the witness, which objections were overruled.

The authorities appear to be in accord on the proposition that as a general rule the testimony of a witness upon matters within the scope of the common knowledge and experience of mankind, must be confined to statements of concrete facts within their observation, knowledge and recollection. A well-founded exception to said rule is that when the conclusion to be drawn from the facts depends upon professional or scientific knowledge or skill and is not within the range of ordinary training or intelligence, a qualified expert may give his conclusion or opinion based upon said facts. 20 Am.Jur. "Evidence", Sec. 765, p. 634;

32 C.J.S. Evidence § 446, p. 74, and Hicks v. Davis, 32 Okl. 195, 120 P. 260.

■ . The evidence in this case, which included photographs of the area in the vicinity of the crossing, developed all pertinent facts bearing upon the issue relative to whether the crossing was in fact unusually dangerous. The jurors, as persons of ordinary knowledge and experience, were, in our opinion, capable of arriving at a conclusion on said issue without benefit of the testimony of an expert witness. We are, therefore, of the opinion that the trial court erred in permitting plaintiff to introduce the evidence of which defendants complain. We are, however, of the opinion that this error does not, for reasons hereafter given, require reversal of the judgment of said court.

As heretofore pointed out, plaintiff alleged that defendants were negligent in operating the train at a speed in excess of that permitted by applicable ordinance of the City of Tulsa; in failing to sound a timely warning and in failing to install adequate warning devices at the crossing which was alleged to be unusually dangerous. The last referred-to alleged act of negligence is not attributable to Durbin who, as Katy's engineer, is not responsible for the condition of the crossing. Katy and Durbin are jointly responsible for the other alleged acts of negligence that are above referred to. In view of the fact that the jury returned a verdict against Durbin, the jury must be said to have concluded that Durbin was either negligent in operating the train at a speed in excess of that permitted by city ordinance or that he failed to sound a timely warning. Under the doctrine of respondeat superior, Katy would be responsible for the negligent acts of Durbin in either of the last mentioned particulars. We are, therefore, of the opinion that Katy is not in a position to predicate reversible error on the admission of the expert's testimony. In Cook v. Atlantic Coast Line Railroad Co., 196 S.C. 230, 13 S.E.2d 1, 133 A.L.R. 1144, a witness was permitted to testify in a railroad-crossing action involving the railroad and its engineer, that no flagman was stationed at the crossing when the accident occurred. The plaintiff alleged in his pleading that the railroad and its engineer were negligent in not sounding the warning device on the locomotive to the approaching train and he did not allege that there was a failure to maintain adequate warning devices at the crossing. For said reason, the appellate court held that the testimony above referred to was inadmissible, but further held that since a verdict was rendered against the engineer who was not responsible for the safety of the crossing, that the admission of the testimony was not prejudicial.

Katy does not contend that there is no competent evidence showing that the crossing was unusually dangerous. In view of this fact and the further fact that the jury in finding against the engineer must, as aforesaid, be said to have found that one or both of the acts of negligence for which the engineer and Katy were jointly responsible were established by the evidence, we are of the opinion that the error which Katy complains of is in fact harmless error. It is provided in part in 22 O.S. 1951 § 1068, that "no judgment shall be set aside or new trial granted * * * unless, * * * after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

■ In the first instruction given to the jury, the trial court stated all allegations of the pleadings. Katy excepted to the instruction but did not submit an instruction covering the issues formed by the pleadings. Katy contends that the "petition was drawn so as to state plaintiff's case in its most favorable light and contained much inflammatory and argumentative matter. Many of the claims were exaggerated and were stated in colorful language which the plaintiff did not support by evidence and had no intention of supporting." Katy failed to point out the allegations of the petition which it referred to in the quoted statement.

The jury was instructed that "This statement of the pleadings simply defines the issues to be tried and the allegations therein made do not constitute any part of the proof of the facts alleged, except where a fact is specifically alleged and is specifically admitted by the other party." In other portions of the instructions the court made clear the issues posed by the pleadings and the evidence. The claim of error on the trial court's part is, in our opinion, without substantial merit.

In the third paragraph of the syllabus to Parkade Corp. v. Chehock, Okl., 312 P.2d 932, 933, this is said:

"The incorporation of the petition and answer in the court's instructions is not prejudicial error, where in other portions of the instructions the issues are clearly stated."

■■ Defendants complain of Instruction "No. 39" relating to recoverable damages, on the grounds that there was a failure to instruct that in fixing future damages the jury should consider the present value of a recovery for estimated future losses or expenses. Such an instruction is necessary and proper where recovery is sought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., but not in cases such as this. Moreover, defendants failed to submit a requested instruction relative to allowable damages, and for said reason they are not in a position to predicate error on the giving of the referred-to instruction. See Willis v. Davis, Okl., 333 P.2d 311, 314, and cited cases.

Defendants also complain of Instructions "No. 25 and 26", which relate to the issue of whether the collision occurred within or without the corporate limits of Tulsa and the provisions of an ordinance of said City fixing the maximum speed of trains within its boundaries. The complaint is based upon the proposition that the evidence shows that the collision occurred outside the corporate limits of Tulsa and for said reason the city ordinance was without application. There was competent evidence showing that the collision occurred within the corporate limits of Tulsa and for said reason we are convinced that the complaint is without merit.

Defendants contend that the judgment should be reversed and a new trial granted because of improper and prejudicial argument on the part of plaintiff's counsel to the jury.

The only objections to the argument of plaintiff's counsel were these: During his argument, said counsel commented on the fact that Darla appeared to be nervous while on the witness stand and undertook to explain the reason for her apparent nervousness. Counsel for defendant interposed an objection to this argument and the trial court admonished plaintiff's counsel thus: "Confine yourself to the record." Shortly before plaintiff's counsel concluded his closing argument, counsel for defendants approached the bench and stated to the court in substance that plaintiff's counsel had exceeded the time allowed him for closing argument and that the argument was "killing" the defendants.

■ In the third paragraph of the syllabus to Westgate Oil Co. et al. v. McAbee, 181 Okl. 487, 74 P.2d 1150, 1151, we stated that:

"Prejudicial remarks of counsel in his argument to the jury are not available as a ground for reversal unless objected to and exception taken at the time such remarks were made, and the remarks, as well as the objection and exception thereto, must be shown in the record of the proceedings of the trial. * * *"

■ The last above referred-to remarks of counsel for defendants wholly failed to represent compliance with the rule laid down in the last cited case. A review of the record fails to show that the argument to which a specific objection was made, and which objection was in effect sustained, served to prejudice defendants.

· Not only did defendants fail to object to the major portion of the argument that they complain of, they also failed to assign

as error in their motion for new trial the making of said argument. In the second paragraph of the syllabus to Ketch v. Smith, 131 Okl. 263, 268 P. 715, we said that "Where the misconduct of counsel is made one of the grounds of error on appeal, the facts upon which said error is based must clearly appear in the record, must be saved in motion for a new trial, and must be of such character as would prejudice the cause of the complaining party." And in Coal Oil and Gas Co. v. Styron et al., Okl., 303 P.2d 965, 970, we said that "Under the oft repeated rule in this court, alleged error not presented in the motion for new trial will not be reviewed by this court." The law being as stated, defendants are not in fact privileged to assert the error that they attempt to assert.

Defendants contend that in conducting the trial of plaintiff's case his counsel in fact presented the claim of each member of the family for damages resulting from the collision in which all members of the family sustained bodily injuries. Defendants refer to the statement of plaintiff's counsel in his opening statement to the effect that the Edwards family was "an ordinary American family"; that in his closing argument said counsel stated that the Edwards family "was an ordinary good and affectionate family until this came up"; that counsel made the further statement in his argument that there had never been a law suit which had such a "terrific impact upon the family". Defendants failed to object to the statements so made and also failed to allege in their motion for new trial that the statements constituted error. We are, therefore, of the opinion that defendants are not in a position to predicate error on the alleged prejudicial statements of plaintiff's counsel.

In connection with the last referred-to contention, defendants again point to the fact that plaintiff's counsel referred to Darla's apparent nervous condition and attempted to give the reason for her condition which was attributed in part to the fact that it might be necessary to place plaintiff in a mental institution because of an injury to his brain which was sustained as a result of the collision. This is the line of argument to which defendants interposed an objection which was in effect sustained.

All members of the Edwards family were to an extent involved in the trial of the case. All members of the family were riding in the automobile involved in the collision. Darla operated the automobile and appeared as a witness. Plaintiff sought to recover damages for past and future medical expenses attributable to the bodily injuries sustained by his wife in the collision. It is agreed that such a claim was properly asserted by plaintiff and since such is the case, the nature and extent of Carmen's injuries could properly be shown in order to show the necessity of past and future medical care and attention. As we read the instruction, the jury was advised that it was considering only plaintiff's cause of action for damages and not Darla's nor Carmen's causes of action for damages. To our way of thinking, defendants have failed to show that the several claims of the Edwards family were submitted to or considered by the jury.

Defendants also contend that the verdict is excessive. We agree.

As of date of the collision, plaintiff was 55 years of age and had a life expectancy of 21.02 years. Prior to the accident he was an able-bodied man. He was regularly employed at a salary of approximately $4,000 per year. As a result of bodily injuries sustained in the collision, plaintiff will never be able to work. Plaintiff's principal injuries were concussion and contusion of the brain; damage to the central nervous system; fracture of the right jaw; fracture of the ribs on the right side; fracture of the left ankle; severe lacerations about the face, neck and forehead; severe tearing, laceration and bruising of the muscles, nerves, ligaments and bones in the neck; extreme shock; and contusions, abrasions, and lacerations over and about the entire body. As a result of said injuries, plaintiff suffered considerable pain and will continue to suffer some pain in the future.

As a result of the brain injury, plaintiff is periodically irrational. There was competent evidence to the effect that his condition in said respect is such that it will be necessary to place him in a private institution.

Carmen's principal injuries were partial evulsion of the scalp; comminuted fracture of the right femur, left femur and left tibia; intracapsular fracture of the right hip; brain concussion, damage to the central nervous system; and broken neck and shock.

The record clearly shows that Carmen's injuries were serious and permanent. At the time of the collision, she was 52 years of age. Her life expectancy was 27.15 years.

Plaintiff schedules his "actual damages" as loss of earnings, $84,441.75; plaintiff's past medical expenses, $7,103.55; future medical expenses, $22,824.00; Carmen's past medical expenses, $21,466.80; future medical expenses, $15,000.00; plaintiff's future custodial care, $114,120.00; Carmen's future care and custody, $22,635.99; licensed practical nurse for Carmen in the future, $220,314.00. The aggregate amount of said items is $507,905.00. Plaintiff points out that the figures which he gave do not include damages attributable to pain and suffering.

We note that all of the figures and evidence to which plaintiff refers, except the sums of $7,103.55 and $21,466.80 and an allowance for loss of earnings to date of trial, and damages for pain and suffering which plaintiff suffered to date of trial relate to damages that will probably be sustained in the future. While it is impossible to state the precise amount of damages which the jury awarded as actual damages sustained as of date of trial, it is apparent that the major portion of the award covered damages which will probably occur in the future.

As to the asserted claim for $222,314 as cost of a licensed practical nurse in the future for Carmen, we note that Carmen testified in substance that her condition was such that it was necessary to employ a housekeeper at $75 per month and that as of date of trial a licensed practical nurse was not employed. While the evidence clearly shows that Carmen sustained serious and permanent injuries, the evidence fails to show that she is a helpless cripple. A physician who had attended her stated in substance that she was capable of doing some of her housework.

As to the asserted claim for $114,120 as custodial care for plaintiff, the evidence fails to show that such care had been extended prior to the trial. In making this statement, we have not overlooked the fact that there was competent evidence to the effect that because of plaintiff's mental condition, he should be placed in an institution where he would be properly cared for and that the cost of such care would be $500 per month.

In determining whether a verdict in an action such as this is excessive, a court will consider all relevant circumstances such as the nature and extent of the injuries; pain endured and that which may be endured in the future; expenses incurred and those which may be incurred in the future; the age of the person injured and his life expectancy; his earning capacity prior to the injury and the extent of the impairment of earning capacity. See 15 Am.Jur. "Damages", Sec. 209, p. 627. And where future damages are awarded, the present worth of the amount awarded as such damages will be considered. See Gallaspy v. Walner, Okl., 324 P.2d 848, 853; St. Louis-San Francisco Railway Co. et al. v. Fox, Okl., 359 P.2d 710; and 15 Am.Jur. "Damages", Sec. 24, p. 416.

Our decisions reflect that in determining whether the amount awarded as damages is excessive, we will give due consideration to the provisions of 23 O.S.1951 § 97, to the general effect that damages in all cases must be reasonable and that no more than reasonable damages may be awarded.

After having carefully reviewed the record, we have concluded that the verdict herein is excessive to the extent of

$371,207 and for said reason the defendants are entitled to a new trial unless plaintiff, within 30 days after the mandate herein reaches the trial court, agrees to a remittitur of that part of the judgment, which, exclusive of costs, exceeds the sum of $278,793.

Affirmed subject to remittitur of $371,207, otherwise reversed and remanded for new trial.

BLACKBIRD, V. C. J., and WELCH, DAVISON, JOHNSON, IRWIN and BERRY, JJ., concur.

WILLIAMS, C. J., and HALLEY and JACKSON, JJ., dissent.

HALLEY, Justice (dissenting).

In addition to the views of Justice JACKSON, expressed in his dissent, with which I agree, I think that the argument of counsel for the plaintiff in his closing was so inflammatory that standing alone would have necessitated a new trial in this case. This statement was made when referring to the employees of one of the defendants:

"They are just a gear in this corporation that grinds people to death. They are just a gear."

There is no evidence in this case to justify counsel in making such a remark.

In Green Construction Co. v. Lampe et al., 174 Okl. 351, 50 P.2d 286, we held a remark improper that was nothing like as inflammatory as the one here.

Similar remarks have been held improper in numerous cases, among which are Nashville, C. & St. L. Ry. v. Mangrum, 15 Tenn.App. 518; Southwestern Greyhound Lines v. Dickson, Tex.Civ.App., 219 S.W.2d 592; Higgins v. Terminal R. R. Ass'n of St. Louis, 362 Mo. 264, 241 S.W.2d 380. See also 88 C.J.S. Trial § 189.

The question is raised that proper objection and exception was not made to this argument. To me the argument made by plaintiff's counsel so flagrantly violated the proprieties of a jury trial that the duty rested upon the judge to declare a mistrial. This statement, which is found in 3 Am.Jur.,

Appeal and Error, Section 248, p. 33, expresses my views on this matter and is:

"In the exercise of its power to do so, an appellate court will consider questions not raised or reversed in the trial court when it appears necessary to do so in order to meet the ends of justice or to prevent the invasion or denial of essential rights. * * *"

A new trial is the only way that this case can be properly disposed of.

I dissent.

JACKSON, Justice (dissenting).

The majority holds the evidence sufficient to support the conclusion that the negligence of the defendants was the proximate cause of plaintiff's injuries. The majority further holds the jury was capable of determining whether the crossing was more than ordinarily dangerous and for that reason it was error for the trial court to permit Captain Coulson, a traffic expert, to express an opinion to the jury that the crossing was dangerous and hazardous. I agree with these conclusions. However, I am of the further opinion that this error and other errors hereinafter discussed were so prejudicial to the defendants that we should require a new trial.

The expert witness, Captain Coulson, administrative head of the Traffic Division of the Tulsa Police Department, testified that he had been with that department for approximately sixteen years; that he had attended practically every course of training school that is available for police officers in the traffic safety field; that he was a fellowship graduate of Northwestern University Traffic Institute at Evanston, Illinois, where he was in attendance for a period of nine months; and that he had attended or lectured at numerous other schools, including Oklahoma University, Oklahoma State University, Purdue University, the University of Louisville, and Texas A. & M. College. With this background of instruction and experience established he was then questioned by plaintiff's attorney:

"Q. Based upon the examination you made on that day, the sight lines which you made, the study of the ground—I call it topography, that may or may not be right—and the road or track, do you have a judgment based upon the study you have made at the Universities and the experience you have had in 15 years as to whether or not that for vehicular traffic going north is a dangerous crossing?

\*    \*    \*    \*    \*    \*

"Objection overruled.

"A. Yes, in my opinion it is a dangerous, hazardous crossing."

\*    \*    \*    \*    \*    \*

"Q. Is it a type of crossing that some type of wigwag or other signal device is warranted by the nature of the crossing?

"(Objection sustained.)

"Q. Captain Coulson, what other type of warning devices are there used *at these dangerous crossings* or even some crossings that aren't dangerous? (Emphasis supplied.)

"A. There are various types. I don't know whether I can name all of them or not, but I can call to mind a few. There is the flasher type which has a series of light heads and the red light flashes in sequence up and down the series of heads. There is the bell type that has a bell that sounds repeatedly. There is a type of which a wigwag arm that wags in front of oncoming traffic. There are others.

"Q. Were there any of these at that crossing that day?

"A. No, sir."

The plaintiff advances several arguments in an effort to show that this testimony by Captain Coulson was neither erroneous or prejudicial. He says "the probative value of Coulson's testimony was a nullity." This is upon the ground that "there was no expression of opinion by any witness that this crossing was *unusually* dangerous or *extra* hazardous." (Emphasis by plaintiff.) It

is further argued in this connection that since the railroad's fireman, Mr. Bowman, testified that "all crossings are dangerous", and that "this court has so held," citing Chicago, R. I. & P. Ry. Co. v. Taylor, 79 Okl. 142, 192 P. 349, that it is obvious that Captain Coulson's testimony was a nullity and harmless. These arguments are not consistent with the record in this case but before examining the record we should first examine the law. I think we expressed the true rule in St. Louis-San Francisco Ry. Co. v. Prince, 145 Okl. 194, 291 P. 973, 978, 71 A.L.R. 357, in quoting from Central Passenger Ry. Co. v. Kuhn, 86 Ky. 578, 6 S.W. 441, as follows:

> "It seems, however, that before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad should keep a flagman or gates at a crossing, *it must first be shown that such crossing is more than ordinarily hazardous;* as, for instance, that it is a thickly populated portion of a town or city, *or, that the view of the track is obstructed* either by the company itself or *by other objects proper in themselves; or that the crossing is a much traveled one,* and the noise of approaching trains is rendered indistinct, and the ordinary signals difficult to be heard, by reason of bustle and confusion incident to railway or other business; *or by reason of some such like cause; and* that *a jury would not be warranted in saying that a railroad company should maintain those extra precautions at ordinary crossings in the country."* (Emphasis supplied.)

We then said:

> "But if like conditions exist at a crossing in the country, we see no reason why the same rule should not apply thereto."

The instant case was presented to the jury upon the theory that the crossing was more than ordinarily dangerous and sufficiently dangerous to require more than the statutory cross-bar sign. But while the

case was presented on this theory, and the jury was authorized to so find, the plaintiff never did in his pleadings, opening statement, evidence, or argument, refer to it other than as a dangerous crossing. When Captain Coulson was not permitted to testify that this was a type of crossing requiring a wigwag or other type of signal, counsel then asked him what other type of warning devices were used *at these dangerous crossings* or at some crossings that are not dangerous.

In view of the use of the words "this dangerous crossing" in connection with the responsibility of the defendants to provide other warning devices and signals, and the emphasis placed thereon throughout plaintiff's petition (which was incorporated in the court's instructions), the opening statement, the evidence, and argument to the jury, there can be no question but that the jury was apprised of the full significance and import of Captain Coulson's testimony that this crossing was more than ordinarily dangerous and required additional warning devices.

Plaintiff further contends that the alleged prejudicial error in the admission of the testimony of Captain Coulson could only be material if the jury had returned a verdict solely against the railroad. In argument it is said that the verdict of the jury conclusively establishes liability against the railroad company on issues other than that of unusually dangerous crossing; that the allegations of negligence against the company were (1) failure to blow a whistle or ring a bell. (2) Excessive speed. (3) Unusually dangerous crossing. Plaintiff then concludes that since the engineer, Durbin, could not be responsible or liable for the unusually dangerous crossing as a matter of law, that it is inescapable that the jury found against Durbin and the Company because of Durbin's negligence in failing to blow the whistle or ring a bell, and because of excessive speed. This argument requires us to examine the record and determine, if we can, why the jury returned a verdict against Durbin.

Remembering that there were only two defendants in this case, M. K. & T. Ry. Co. and engineer Durbin, I have taken the following quotations from plaintiff's argument to the jury:

"What right do *they* have—and his Honor instructed that they have an obligation to maintain that crossing. It is *their* obligation. (Emphasis supplied.)

"As it happens technically, and in your verdict I insist under the law and in order that there will be no technical difficulty in this cause you may return a verdict against the agent in here, return a verdict against the engineer as well as the company."

"Mr. Durbin is just a part of the gears like the rest of them. We must have a verdict against him. There is technicalities that could be involved."

Again, why did the jury return a verdict against Durbin? Mindful that all lawyers would agree that engineer Durbin was not responsible for providing adequate warning devices at the crossing, that is not what the court told the jury. In itemizing the elements of negligence charged against the defendants, the trial court, in stating the issues (or plaintiff's petition) in its instructions to the jury said:

"(e) The defendant railroad corporation, its agents, servants and employees, *and in particular Ernest A. Durbin, engineer,* all acting with the scope of their employment and agency, *failed, neglected and refused* to maintain a proper look-out *or to use flagmen or signalmen at all dangerous intersections and crossings* which might be utilized by automobiles, *and particularly failed to do so at the intersection in question* in the corporate limits of the city of Tulsa, Oklahoma." (Emphasis added.)

In Instruction No. 5 the jury was told:

"This *statement of the pleadings* simply *defines the issues to be tried* * * *". (Emphasis supplied.)

In Instruction No. 28, the jury was told:

"*Should you find* by a preponderance of the evidence herein that the defendant, *Ernest A. Durbin, was guilty of any of the acts of negligence alleged in the plaintiff's petition* and that said negligence was the proximate cause of the accident and resulting injury to the plaintiff, if any, then your verdict should *be* for the plaintiff and *against the defendant, Ernest A. Durbin,* and the defendant, Missouri, Kansas, Texas Railroad Company." (Emphasis supplied.)

In order not to unduly burden this dissent with quotations I have extracted and quote language which appears in each of the following instructions:

Instructions "Nos. 30, 31 and 32."

"*Should you find* by a preponderance of the evidence herein that the defendant, *Ernest A. Durbin, was guilty of any of the acts of negligence alleged in plaintiff's petition,* and that the negligence * * * combined and concurred * * * *as the proximate cause* of the accident and resulting injury to the plaintiff, if any, *then your verdict should be for the plaintiff and against the defendant, Ernest A. Durbin,* * * *." (Emphasis supplied.)

I have not found in my examination of the record where either of the attorneys, or the court, ever explained to the jury that Durbin was not responsible for the maintenance of proper warning devices at the crossing. The above quoted issues and instructions clearly demonstrate that the jury was told that if Durbin failed to use flagmen or signalmen at the crossing that he was guilty of one of the acts of negligence charged against him, and if the jury so found, they should hold him liable.

Considering the foregoing I am unable to conclude, as does the plaintiff, that the jury did not find engineer Durbin negligent in failing to maintain proper warning devices at the crossing.

Plaintiff invites attention to Cook v. Atlantic Coast Line Railroad, 196 S.C. 230, 13 S.E.2d 1, 7, 133 A.L.R. 1144, as "on all fours" with the instant case, quoting therefrom as follows:

"The Judge instructed the jury that they could find a verdict against the defendants or either of them *only upon the negligence charged in the specifications set forth in the complaint.* The verdict against the engineer, who of course had nothing to do with the absence or presence of the watchman at the crossing, certainly indicated that the allowance of this evidence was not prejudicial, even if error." (Emphasis supplied.)

The difference in the Cook case and the instant case is obvious. In our case the jury was effectively told that under the specifications set forth in plaintiff's petition (and copied in the court's instructions) engineer Durbin was charged with negligence in failing to use flagmen or signalmen at the crossing, and that if they found Durbin guilty of this act of negligence, as alleged in plaintiff's petition, then they should find for the plaintiff and against Durbin.

Finally the question is posed as to whether opinion and expert testimony from an officer holding an official position is prejudicial. The general rule, and the rule that we have consistently followed, is that an expert witness should not be permitted to testify when it is apparent that the jury is capable of evaluating the testimony that they have heard. In our reluctance to reverse trial courts we have in Tuck v. Buller, Okl., 311 P.2d 212, 66 A.L.R.2d 1043, and in Miller v. Hickman et al., Okl., 359 P.2d 172, held that we would not reverse where the trial court permitted an officer to fix the point of impact in automobile cases, in the absence of apparent prejudice. We did not explain in those cases why such testimony was not prejudicial. We have held in strong language that the erroneous admission of such testimony is prejudicial.

In Maben v. Lee, Okl.1953, 260 P.2d 1064, 1067, 1068, on the question of prejudice, we said:

"Such testimony (of a highway patrolman) given by a witness occupying an official position, assuredly must have greatly impressed the jury, particularly since the average layman undoubtedly would be inclined to place the stamp of authenticity upon testimony by such an officer. * * * we cannot say that erroneous admission thereof was not prejudicial to defendant. Rather, its admission was material, even vital to defendant and the admission thereof was prejudicial. "

In Kelso v. Independent Tank Co., Okl. 1960, 348 P.2d 855, 858, we quoted the foregoing statement with approval.

Other courts have expressed themselves in similar language. In Beckman v. Schroeder, 224 Minn. 370, 28 N.W.2d 629, 637, it was said:

"No doubt the official position of these experts carried great weight with the jury in locating the place of the collision in the north lane."

In Padgett v. Buxton-Smith Merc. Co., 10 Cir., 1958, 262 F.2d 39, 42, it is said:

"* * * While we are loath to interfere with the broad discretion of the trial courts in matters of this kind, the opinion came from an officer of the law whose badge of authority gave it evidential significance which may not be dismissed as harmless or non prejudicial. As an official opinion of a fact matter within the knowledge or comprehension of the members of a jury it carries a weight which tends to usurp the judicial function. It is indicative, we think, of what appears to be a constantly growing tendency in cases of this kind for an investigation officer to assume the prerogative of assessing liability. This is the responsibility of the trier of the facts."

I am convinced that our conclusions expressed in Maben v. Lee, supra, is supported by sound reasoning and should be followed in this case.

As an additional ground for reversal the defendants in their proposition four submit

that Instruction No. 1 (the statement of the issues) was erroneous and prejudicial because it consisted of a reading to the jury of involved and voluminous pleadings containing highly inflammable characterization of the charges. The defendants objected to this instruction but did not present to the trial court a requested instruction in writing.

The plaintiff defends this instruction upon the ground that a requested instruction in writing was not presented, and upon the additional ground that in other portions of the instructions the issues are clearly stated.

In Atchison, Topeka & Santa Fe Ry. Co. v. Hicks, 208 Okl. 689, 258 P.2d 672, 673, we held in the sixth paragraph of the syllabus as follows:

"It is the duty of the trial court on its own motion to properly instruct the jury upon decisive issues made by the pleadings and the evidence introduced at the trial and the failure so to do constitutes fundamental error."

In the second paragraph of the syllabus in Schaff v. Richardson, 120 Okl. 70, 254 P. 496, it is held:

"In a trial to a jury where the court fails and refuses, over objection and exception of defendant, to define to the jury the issues raised by the pleadings, but instead copies in full such pleadings, and leaves it to the jury to determine for itself what issues shall be settled by its verdict, such action by the trial court is prejudicially erroneous, especially where the pleadings cover many pages of the typewritten record, raise numerous issues, and present close technical questions about which laymen can have no accurate or professional knowledge. It is the duty of the trial court to define and properly limit the issues submitted to the jury for determination." (Plaintiff's amended petition therein covered more than eight pages of the case made.)

In the second paragraph of the syllabus in First Nat. Bank of Mounds v. Cox, 83

Okl. 1, 200 P. 238, we held in the second paragraph of the syllabus:

"It is the duty of the trial court to give, upon his own motion, proper instructions substantially covering the issues and the evidence produced at the trial of any cause, and it is fundamental error for it to fail so to do; * * *".

In Liberty Nat. Bank of Weatherford, Okl. v. Semkoff, 184 Okl. 18, 84 P.2d 438, 440, the plaintiff did not save exceptions to the instructions. Therein we said that we are precluded from reviewing the instructions further than to determine whether they are free from fundamental error. We further said:

"We have therefore examined the instructions given by the court merely for the purpose of determining whether or not they are free from fundamental error, and we find that they fail to instruct the jury upon the decisive issues made by the pleadings and the evidence introduced at the trial, and are in this respect fundamentally erroneous."

In Petty et al. v. Frank et al., 194 Okl. 382, 151 P.2d 926, we held that it is the duty of the trial court on its own motion to submit the tenable theories of the litigants concerning the issues in the action, and a failure to discharge this duty is ground for a new trial even though no instruction is requested by the parties.

In Lambard-Hart Loan Co. v. Smiley, 115 Okl. 202, 242 P. 212, at page 214, it is said:

"Pleadings are usually drawn most favorable to the pleader, and the case is rare where the proofs support all allegations fully. Generally they are argumentative and abstruse rather than succinct and didactic. The result is inevitable that where pleadings are permitted to go to the juryroom, arguments which are proper to be considered only by the court are vicariously presented to the jury in secret, and the better pleader is apt to present the stronger and more persuasive argument. To require the losing party un-

der such circumstances to show prejudice to his cause resulting therefrom would be to cast on him an unsupportable burden and to require of him a legal impossibility. The jury should be kept free from even vicarious intrusion after the cause is submitted. * * *

"It follows from what has been said that it is improper practice for a trial court to permit the pleadings in a case to be taken by the jury in its retirement, and where such action by a trial court is objected to, and proper exception reserved, prejudicial error results."

In Sigma v. Alluri, 1953, 351 Ill.App. 11, 113 N.E.2d 475, 479, it is said:

"A more serious objection than mere length is that the instruction tends to emphasize plaintiff's charges of liability by placing in the court's mouth substantially the entire charge of the complaint. * * * To hear a judge, the one man in the courtroom whose remarks are most respected. and most dutifully attended, solemnly repeat with all the influence of his favored position, minute after minute and sentence after sentence, detailed charges of negligence carefully drawn by partisan attorneys to present one side of the case in its most appealing aspects, must tend to unduly influence a jury toward the side whose charges are so persistently and so effectively presented through such a power medium."

In this case the court instructed on the issues by reading to the jury the petition of the plaintiff and the answer of the defendants, covering thirteen pages of the case made for plaintiff's petition and two pages for the defendant's answer. A total of forty one instructions were given. They are allegedly involved, voluminous and inflammatory. A few excerpts will be quoted therefrom:

"the tracks run parallel to and at the base of a large hill which completely obstructs the vision of the members of

the train crew south on Sheridan Avenue  *   *   *".

" *   *   * it is impossible for northbound vehicular traffic to observe any train traveling in a southeasterly direction on said track until the train is actually in and upon the thoroughfare known as South Sheridan Avenue."

"That it was the further duty of the engine crew of said train, and in particular Ernest A. Durbin, engineer, to *   *   * propel and drive said train at a speed sufficient to avoid a collision with any vehicle on a thoroughfare which crosses their tracks, and to stop the train within the assured clear distance ahead, when such vehicle might be observed."—

"That the defendant railroad corporation and its engineer, Ernest A. Durbin, in operating the train in the manner previously described  *   *   * were under a duty to  *   *   * operate its locomotive and train in such a manner that would permit same to be brought to a complete stop within the assured clear distance ahead,  *   *   *.

"In addition thereto, plaintiff has suffered the most agonizing and excruciating pain possible for a mortal to undergo and still survive."

"The defendant railroad corporation  *   *   * and in particular Ernest A. Durbin, engineer,  *   *   * failed, neglected and refused  *   *   * to use flagmen or signalmen at *all* dangerous intersections and crossings which might be utilized by automobiles, and particularly failed to do so at the intersection in question."

I do not find from an examination of the court's instructions that the above quoted excerpts were explained or removed from the consideration of the jury. Accordingly I must agree with the defendants that the giving of Instruction No. 1 constituted prejudicial and fundamental error.

For the reasons assigned I must, and do, respectfully dissent.