**Pamela G. FELLERS, Appellant,**

v.

**ST. LOUIS–SAN FRANCISCO RAIL-WAY COMPANY, a Missouri Corporation, Appellee.**

No. 48794.

Supreme Court of Oklahoma.

Oct. 25, 1977.

Rehearing Denied Jan. 11, 1978.

Manville T. Buford, John M. Merritt, Oklahoma City, for appellant.

Ben Franklin, Franklin, Harmon & Satterfield, Inc., Oklahoma City, for appellee; Donald E. Engle, St. Louis, Mo., of counsel.

LAVENDER, Vice Chief Justice.

An automobile-train collision occurred at the grade crossing of Douglas Boulevard and the St. Louis-San Francisco Railway Company's tracks, located in the city limits of Oklahoma City, on November 8, 1973, at about 2 p. m. Pamela G. Fellers (Fellers) was the driver of the automobile. The automobile approached the railroad crossing from the north going south. The train approached the grade crossing from the northeast going southwest. The crossing was protected by crossbuck signs and a bell. For an automobile travelling south on the road, that sign was located on the traveler's right. There were some obstructions. The angles of intersection between the track and the road were approximately 47° and 133°. This was a very familiar crossing to Fellers. She had crossed it twice a day for a period of time going to and from work. She had crossed it about one and a half hours before the collision.

Fellers brought suit against St. Louis-San Francisco Railway Company (railroad), appellant-defendant, and the train engineer, Mendell, for personal injuries suffered from the collision. Trial was to a jury. Verdict was returned under comparative negligence. The verdict had the effect of denying recovery to Fellers. The jury found Fellers 50% negligent, the railroad 50% negligent, and attributed no negligence to the train engineer. Fellers appeals.

For the sole basis of admissibility of the expert witness's testimony as to criteria used by railroads in determining the grade crossing protection given the highway traveler, Fellers argues custom and use of the railroad industry. Fellers admits she did not plead the custom and use sought to be proved. She contends there is no need to plead the custom and its violation for that is not the basis of her cause of action.

The railroad argues the necessity to plead a custom and use of the industry, and that the excluded testimony would have been an invasion of jury issue, that of the crossing being "extra hazardous" and more care required by the railroad in protecting the highway traveler, Fellers.

The custom prevailing in certain businesses must be pled in order to be subject of proof. *Harper v. Levine's, Inc.,* Okl., 435 P.2d 127 (1967).[1] *Harper, supra,* involved an action for personal injury allegedly occurring as a result of a store's negligence. Trial court sustained a demurrer to Harper's evidence. Reversal was sought for trial court had refused testimony as to custom and usage of other similar stores as to the methods of stacking and displaying rugs. There, it was this court's opinion that the custom prevailing in a certain business must be pled in order to be subject of proof. The trial court was affirmed and reversal was refused.

Fellers cites *Davis v. Whitsett,* Okl., 435 P.2d 592 (1967) and contends no need to plead "custom and use" for the violation of the custom is not the basis on which her cause of action depends. In *Davis, supra,* testimony was allowed that if an operator told a welder to go ahead and weld an oil tank, then it was assumed the tank had been "safed." It was the "usual practice" that the lease operator had the tank steamed out in preparation for welding.

We distinguish *Davis, supra.* The opinion doubted the testimony involved a "local custom" (p. 597). There, the danger was latent. The issue was whether the operator knew of the danger but failed to warn the welder. Besides the "usual practice," there was other evidence which tended to show the operator did not warn the welder of the dangerous conditions. Here, the danger was not latent. The highway traveler, Fellers, was very familiar with the crossing. She was not without knowledge of the danger. By crossbuck sign and bell, the railroad had warned of the danger. Allowing an expert witness to testify of customary use by the railroad industry of criteria for determining what type of warning need be used at a particular grade crossing invaded the jury issue. Whether the crossing was "unusually dangerous" and, if so, then the railroad's duty was for decision by the jury. Fellers makes no issue of the trial court instructions. Her brief includes a portion of instruction No. 9.[2] Under that instruction, the issue of the character of the crossing as to being "unusually dangerous" was left to the jury, including the railroad's duty in that instance. *Missouri-Kansas-Texas Railroad Co. v. Edwards,* Okl., 361 P.2d 459 (1961).[3]

1. Opinion at p. 129 reads:

"* * * In the case at bar, no allegation of custom or usage in the industry was contained in the petition or in any of plaintiff's subsequent pleadings. In *Sanders v. C. P. Carter Const. Co.,* 206 Okl. 484, 244 P.2d 822, 825, we stated:

'However, in order that custom prevailing in certain businesses, trades, or occupations may be effective, it must be plead and proved that the custom relied on related to the particular trade and business or occupation in which the party to be charged is engaged unless he had knowledge of such custom.'

'* * * However, where local custom is relied upon in order that evidence of such custom may be effective it must be plead and proved that the party to be charged had knowledge of such custom or that such custom is notorious, universal and well established.'

'* * * In the absence of such allegation evidence as to the local custom pleaded could

not properly have been admitted in evidence.'"

2. INSTRUCTION NO. 9:

*  *  *  *  *  *

". . . You are further instructed, however, if you believe from a preponderance of the evidence that the railroad crossing where the train of the defendant and the automobile of the plaintiff collided was an unusually dangerous crossing and the defendant railway company knew of the unusually dangerous nature thereof or in the exercise of ordinary care should have known of the unusually dangerous nature thereof, it is then the duty of the defendant railway company to employ such means as would be reasonably necessary considering the character of the crossing to warn the travelers of the approach of any trains  . . . .."

3. Opinion at p. 464 reads:

"The evidence in this case, which included photographs of the area in the vicinity of the crossing, developed all pertinent facts bearing

■ In this case *Harper, supra,* is controlling. Contra to Fellers' position, she sought at trial, through the expert witness, to make "custom and use" of the railroad industry the measure of the defendant railroad's duty. That makes the violation of any such proven custom "the very basis upon which plaintiff's cause of action depends." The custom is required to be pled. *Davis, supra,* p. 598. Fellers ignored that requirement. She sought the advantage of proving the custom without pleading it. The trial court did not commit a reversible error in excluding the customs of the railroad industry sought to be shown at trial through the expert witness. The customs were not pled.

AFFIRMED.

WILLIAMS, IRWIN, BERRY and DOOLIN, JJ., concur.

HODGES, C. J., and DAVISON and SIMMS, JJ., dissent.

SIMMS, Justice, dissenting.

I respectfully dissent.

This was an action based on negligence, not breach of a custom. Plaintiff's lawsuit was based upon defendant's alleged failure to design, construct and maintain its crossing and a suitable warning device in the manner that a reasonable and prudent railroad would have done in the same circumstances.

Plaintiff's expert, Gerald Cysewski, was offered for the sole purpose of stating facts regarding the criteria promulgated by the American Association of Railroads for the design, construction and maintenance of crossings and suitable warning and safety devices. This testimony was proffered only as evidence tending to support plaintiff's claim that defendant failed to exercise ordinary care. The standards were not the basis for the lawsuit. They were only possible indicia of negligence.

A custom or practice of a industry must be pled *only* when breach of the custom *itself* is the basis of recovery or defense. When the basis of the lawsuit is negligence and custom or standard practice is merely evidence thereof, it need not be pled.

The law on this subject is clearly set forth in *Davis v. Whitsett,* Okl., 435 P.2d 592 (1967). In *Davis,* as in the instant case plaintiff brought an action in negligence and presented evidence of a "custom" only to show the jury what others in the same circumstances do, as an aid to the jury in its determination of whether defendant was negligent. In *Davis,* the testimony concerned the usual practice of oil lease operators to "safe" (steam out) tanks before calling welders to weld the tanks. The Court noted that even if it were assumed that this practice amounted to a "local custom", it need not be pled for the breach of the "safing" custom was not the basis of plaintiff's lawsuit. Her basis for recovery rested upon negligence, and evidence of this usual procedure merely tended to establish that fact.

The court went to great lengths to explain that a custom needs to be pled only in the situation where breach of the custom itself is the basis of recovery.

The court discussed, at 598, several previous cases [1] wherein it had held necessary to plead a custom. The following discussion by the court fully explains the distinction between those certain instances where cus-

upon the *issue relative to whether the crossing was in fact unusually dangerous. The jurors, as persons of ordinary knowledge and experience, were, in our opinion, capable of arriving at a conclusion on said issue without benefit of the testimony of an expert witness.* We are, therefore, of the opinion that the trial court erred in permitting plaintiff to introduce the evidence of which defendants complain."

1. *Smith v. Stewart et al.,* 29 Okl. 26, 116 P. 182 (an action on an express, oral contract); *School District No. 22, Love County v. Culwell,* 62 Okl. 283, 162 P. 949 (another action on express contract); *Gilbert v. Citizens' National Bank of Chickasha,* 61 Okl. 112, 160 P. 635, L.R.A. 1917A, 740 (an action for wrongful conversion of personal property by breach of express contract); *Burnett et al. v. Tisdell,* Okl., 370 P.2d 924 (an action to quiet title to real property in which the defendant pleaded title by adverse possession); and *Sanders v. C. P. Carter Construction Co. et al.,* 206 Okl. 484, 244 P.2d 822 (a negligence action.)

tom must be pled and a situation such as we have in the instant case, where custom merely furnishes evidence of negligence and need not be pled.

"Analysis of the opinions in the above cited cases [see footnote 1] discloses that in each one the proof of a breach of some alleged local custom or usage would also establish the existence and a breach of an obligation of the defendant to the plaintiff. The breach in each case was the basis of the plaintiff's claim of damage. The court in the cases applied the rule as set out in *Smith v. Stewart et al.,* supra, as follows:

'  *   *   *  it is generally the rule that, before a local custom or a custom or usage applying to a special or particular class of business may be made *the basis of recovery,* it must be pleaded by the party relying on it.  *   *   * '

*   *   *   *   *   *

"The reason behind the requirement of the cited cases that the custom be pleaded is that the violation of the custom is the very basis upon which plaintiff's cause of action depends. The same reason does not exist in the case before us. "In this case *if* the plaintiff relied, for his cause of action, upon the defendants' breach of a custom which required the latter to steam clean a recently used oil tank before permitting a welder to work on it, *then* clearly the above cited cases would require the pleading of such a duty and the breach thereof. *Here, however, the issue is whether or not the defendant knew of the danger and failed to warn* plaintiff's decedent of the existence of volatile fumes in the tank, before the latter was advised by the agents of defendants that the tank was "ready" for welding. The evidence was admissible, as we have seen, for the purpose of showing that plaintiff's decedent had no reason to be aware of the existence of such fumes in the tank and for the further purpose of showing that on the contrary defendants did have reason to be aware of such latent defects. Other evidence was also admitted which tended to show defend-

ants did not warn the plaintiff's decedent of the dangerous conditions.

"Evidence of local custom is admissible without first pleading it if such custom is not relied upon as the basis of or one of the material issues in plaintiff's cause of action. Where the real and basic issues involve defendants' knowledge of a dangerous condition and a failure to warn invitee of the existence of such danger, evidence of a local custom tending to establish such facts need not be alleged." (emphasis supplied)

And, paragraph one of the court's syllabus reads as follows:

"1. Where the breach of a local custom or usage is one of the grounds of negligence upon which the plaintiff relies it must be plead that the party to be charged had knowledge of such custom or that such custom is notorious, universal and well established before proof of such custom will be admissible; *conversely, where the petition charges common law negligence, the existence of a custom or procedure is merely evidentiary and need not be pleaded as such evidentiary fact."* (emphasis supplied)

The reason for requiring a custom to be pled when it forms the basis of a lawsuit is basic—it gives the adverse party notice of the nature of the claim being made against him.

In *Smith v. Stewart,* 29 Okl. 26, 116 P. 182 (1911), plaintiff brought action against defendant for money he alleged defendant had been overpaid for sale of his cotton. Plaintiff had pled a contract between the parties and presented evidence of that contract in his case in chief, but on rebuttal attempted to base his recovery on an alleged custom of cotton sellers. This Court held the trial judge was correct in excluding testimony regarding the custom as plaintiff had attempted to " . . . make such usage or custom, if it existed, the basis of his recovery." (116 P. at 182).

The Court explained the rationale as follows:

"Plaintiff by his petition, as well as by his evidence in chief, gave notice to defend-

ant that he was basing his right of recovery only upon a specific contract guaranteeing the weights. It would be manifestly unfair to a defendant, who had prepared to meet his case upon this issue, to permit plaintiff in rebuttal to introduce evidence establishing not a specific contract, but one created by the existence of a local custom or usage of which the party had knowledge and with reference to which they were presumed to contract."

In the instant case, plaintiff's action was for negligence and, as in *Davis, supra,* the usual practice in the industry even if it is viewed as a "custom" was offered merely as evidence of ordinary care. It was not the basis of recovery. *Davis, supra,* is not distinguishable. *Harper v. Levines, Inc.,* Okl., 435 P.2d 127 (1967) is not inconsistent with *Davis.*

Evidence of what others, in the same position as defendant, do in the same circumstances is admissible to aid the jury in determining whether defendant was negligent. This, of course, does not establish directly the ultimate issue of negligence by showing that failure to comply with the usual procedure or custom was the equivalent of negligence "per se". *Davis v. Whitsett, supra.* Customary practice is not ordinary care; it is but *evidence* of ordinary care. *Northwest Airlines v. G. L. Martin Co.* (6th Cir., 1955) 224 F.2d 120, 50 A.L.R.2d 882, cert. den. 350 U.S. 937, 76 S.Ct. 308, 100 L.Ed. 818 reh. den. 350 U.S. 976, 76 S.Ct. 431, 100 L.Ed. 846. See also: *Annot. Admissibility Upon Issue of Negligence of Evidence of Custom or Practice of Others,* 137 A.L.R. 611; 2 *Harper and James, The Law of Torts,* § 17.3 (1956); 1 *Jones on Evidence,* § 4.25 (6th Ed. 1972).

Apart from the issue of whether plaintiff's expert should have been allowed to testify from his own knowledge and expertise as to criteria which must be considered in the design of crossing and warning systems, is the issue of the admission of the relevant standards of the American Association of Railroads through his testimony.

Safety codes or standards promulgated by voluntary associations, such as the American Association of Railroads, have been recognized as admissible in many jurisdictions. While not carrying the force of law, industry standards are recognized as relevant and material on the issue of negligence.

See: *Annot. Admissibility of Safety Codes or Standards,* 58 A.L.R.3d 946. See, also, e. g.: *Darling v. Charleston Comm. Mem. Hospital,* 33 Ill.2d 326, 211 N.E.2d 253, 14 A.L.R.3d 860 (1965), cert. den. 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209 (*hospital regulations and standards*); *Jorgensen v. Horton,* Iowa, 206 N.W.2d 100 (1973) (*Associated General Contractors Manual*); *St. Louis-San Francisco Railway v. Burlison,* Fla.App., 262 So.2d 280 (1972) (*American Association of Railroads Standards*); *Boston & Maine Railroad v. Talbert* (1st Cir., 1966) 360 F.2d 286 (*"recognized" standards for railroad and highway crossings*); *Rouse v. New York & S. L. R. Co.,* 349 Ill.App. 139, 110 N.E.2d 266 (1953) (*standards of American Association of Railroads*); *Pust v. Union Supply Co.,* Colo. App., 561 P.2d 355 (1977) (*safety codes regarding conveyors*); *McComish v. DeSoi,* 42 N.J. 274, 200 A.2d 116 (1964) (*private and military safety codes*); *Isom v. Schettino,* 129 Ga.App. 73, 199 S.E.2d 89 (1973) (*traffic manual regarding warnings for railroad crossing*); *Nordstrom v. White Metal Rolling and Stamping Corp.,* 75 Wash.2d 629, 453 P.2d 619 (1969) (*private standards for ladder construction*).

Additionally, I do not believe the trial judge was correct in excluding plaintiff's proffered expert testimony by reason of *Missouri-Kansas-Texas Railroad Co. v. Edwards,* Okl., 361 P.2d 459 (1961). In *Edwards* we found the trial judge erred by allowing plaintiff's expert to give his opinion that the crossing in question was a "dangerous, hazardous crossing". (at 463).

Plaintiff in the instant case specifically advised the trial judge that in accord with the dictates of *Edwards,* no attempt would be made to elicit an opinion from Cysewski as to whether this crossing was ultra-haz-

ardous. The court was advised that Cysewski would state to the jury only those criteria[2] which, in the judgment of the railroad industry, must be considered in the design, construction and maintenance of crossings and ascertaining suitable signalling and safety devices. Plaintiff also advised the court that he would not elicit an opinion from Mr. Cysewski as to what type of signal should have been placed on this crossing; nor would his testimony bear on how a reasonable, prudent automobile driver could have safely used the crossing.

Plaintiff argues that the testimony and evidence was admissible and that the trial court erred in excluding it. She cites and relies on *Koch v. Southern Pacific,* 266 Or. 335, 513 P.2d 770 (1973) in support of her contentions.

In my opinion, *Koch* is directly on point and the reasoning of the Oregon Supreme Court is persuasive.

In *Koch,* as in *Edwards, supra,* the expert's opinion that the crossing in question was "ultra-hazardous" was held to be improper as was his opinion of the capabilities of a reasonably prudent automobile driver to use the crossing. The Court found these areas of questioning invaded the jury's province and required application of "legal" standards rather than industrial knowledge and expertise. The court was careful to point out however, that the expert's testimony regarding those circumstances which tend to make a crossing dangerous and the ways those dangers may be alleviated are proper and appropriate areas of expert testimony.

The Court described the proper bounds of expert testimony as follows:

"There is no doubt that the experts who testified in the present case had superior knowledge and training concerning railroad crossings and those circumstances which make them dangerous. Thus, it was appropriate for the experts to point out to the jury, as they did, the aspects of the crossing which increased its danger to vehicular traffic and the steps that could have been taken by the railroad to alleviate such danger." 513 P.2d at 773.

\* \* \* \* \* \*

"We believe an expert in railroad crossing safety is no more competent to evaluate the capabilities of a reasonably prudent automobile driver than are the court or members of the jury. Such an expert's training and experience give him special knowledge of those situations which tend to cause accidents. In addition, he can predict with some degree of accuracy the relative decrease in the accident rate at crossings which will be realized by the use of different kinds of safety equipment.

\* \* \* \* \* \*

"We therefore, must hold that the expert witnesses exhausted their expertise when they testified regarding the dangerous circumstances surrounding the crossing and the ways in which those dangers could be alleviated."

For the above and foregoing reasons, I believe the plaintiff should have been allowed to present the testimony of her expert witness and the standards of the American Association of Railroads regarding crossings. I believe she was prejudiced by the exclusion, and therefore respectfully dissent.

I am authorized to state that HODGES, C. J., and DAVISON, J., join with me in this dissent.

---

**2.** Operating speed of the train, speed of vehicles crossing tracks, obstructions of sight distances in the four quadrants being crossed, the angle that the track crosses the roadway, elevation of the roadway.